Cooke, J.
(dissenting). Today, the majority of this court holds that in the absence of exigent circumstances, the police may enter the home of a suspect, whether by force or simply without his consent, in order to effect an arrest for a felony for which they have probable cause but no warrant.
In so doing, the court leaves the law of this State in an anomalous state of flux: the Fourth Amendment forbids police *320 entry into a private home to search for and. seize an object without a warrant except in carefully circumscribed instances (Katz v United States, 389 US 347, 357); yet, in the case of an arrest of a person, where the invasion of personal privacy interests is that much greater, the protections afforded by the amendment may be cast aside based solely upon the arresting officer’s subjective notion of probable cause. Thus, while a citizen’s guarantee to be free from unreasonable governmental intrusion constitutes the heart of the Fourth Amendment, the bifurcated standard between search and arrest announced today accords an individual’s bare possessions a greater quantum of protection than his very person, reviving the values of an era in which property interests were exalted over personal liberties.
Surprisingly, the Supreme Court has yet to confront the question of whether the police may arrest a man in his home —in the absence of exigent circumstances without a warrant (see, e.g., United States v Santana, 427 US 38; Jones v United States, 357 US 493, 499-500), but has, nevertheless afforded valuable insights as to its proper resolution. Thus, in Coolidge v New Hampshire (403 US 443), Justice Stewart, writing for the majority and responding to Justice White’s statement in dissent, stated: "It is clear, then, that the notion that the warrantless entry of a man’s house in order to arrest him on probable cause is per se legitimate is in fundamental conflict with the basic principle of Fourth Amendment law that searches and seizures inside a man’s house without warrant are per se unreasonable in the absence of some one of a number of well defined 'exigent circumstances.’ * * * If we were to accept MR. JUSTICE WHITE’S view that warrantless entry for purposes of arrest * * * [is] per se reasonable, so long as the police have probable cause, it would be difficult to see the basis for distinguishing searches of houses and seizures of effects. * * * If we were to agree with MR. JUSTICE WHITE that the police may, whenever they have probable cause, make a warrantless entry for the purpose of making an arrest * * * then by the same logic any search or seizure could be carried out without a warrant, and we would simply have to read the Fourth Amendment out of the Constitution” (id., at pp 477-480; see, also, Warden v Hayden, 387 US 294; Davis v Mississippi, 394 US 721, 728; Wong Sun v United States, 371 US 471, 480-481).
Although the point has not been squarely adjudicated since *321 Coolidge (see United States v Watson, 423 US 411, 418, n 6), its proper resolution, it is submitted, is manifest. At the core of the Fourth Amendment, whether in the context of a search or an arrest, is the fundamental concept that any governmental intrusion into an individual’s home or expectation of privacy must be strictly circumscribed (see, e.g., Boyd v United States, 116 US 616, 630; Camara v Municipal Ct., 387 US 523, 528). To achieve that end, the framers of the amendment interposed the warrant requirement between the public and the police, reflecting their conviction that the decision to enter a dwelling should not rest with the officer in the field, but rather with a detached and disinterested Magistrate (McDonald v United States, 335 US 451, 455-456; Johnson v United States, 333 US 10, 13-14). Inasmuch as the purpose of the Fourth Amendment is to guard against arbitrary governmental invasions of the home, the necessity of prior judicial approval should control any contemplated entry, regardless of the purpose for which that entry is sought. By definition, arrest entries must be included within the scope of the amendment, for while such entries are for persons, not things, they are, nonetheless, violations of privacy, the chief evil that the Fourth Amendment was designed to deter (Silverman v United States, 365 US 505, 511).
The court reaches its conclusion that a warrant is not required for a police officer to enter a private home and effect an arrest therein, so long as he has probable cause to believe that a felony has been committed on a number of factors, none of which, it is submitted, supports its holding. Reasoning that the intrusion which attends entry into the home to effect a warrantless arrest is somehow less egregious than entry to conduct a search, the majority simply reads the warrant requirement out of the Fourth Amendment. Even if one were to accept the conclusion that incursion for the purpose of arrest is less extensive than that for search (but see Foley v Connelie, 435 US 291, 297; United States v Watson, 423 US 411, 428 [Powell, J., concurring]; Chimel v California, 395 US 752, 766 [White, J., dissenting]), it is difficult to harmonize the constitutional dictate that any governmental intrusion into the sanctity of the home must be controlled by a neutral Magistrate with whatever actions the police may take after that intrusion is a fait accompli. Indeed, from the standpoint of the citizen — to whom the language of the Fourth Amendment is directed — it makes little difference whether the inva *322 sion of the privacy of his home was made to effect a warrant-less arrest or a warrantless search (Lankford v Gelston, 364 F2d 197, 205).
The police are constitutionally forbidden to enter and search an individual’s home in the absence of exigent circumstances, even where there is no doubt that the object of the search is within (Agnello v United States, 269 US 20, 32). Nevertheless, solely because of the officer’s perception of probable cause this same individual may have his constitutional guarantee of privacy violated and may be exposed to arrest while still in his dwelling. The distinction is tenuous at best, for it may be said that an entry to arrest is simply a search for a person rather than a search for things (Dorman v United States, 435 F2d 385, 390-391; Commonwealth v Forde, 367 Mass 798, 805) and that the arrest itself is "quintessentially a seizure” (United States v Watson, 423 US 411, 428 [Powell, J., concurring]). In short, the constitutional guarantee that assures citizens the privacy and security of their homes unless determined otherwise by a judicial officer, applies with equal force in the case of entry to arrest a suspect as it does in the case of entry to search for property (United States v Reed, 527 F2d 412; United States v Killebrew, 560 F2d 729; United States v Calhoun, 542 F2d 1094; United States v Shye, 492 F2d 886; Vance v North Carolina, 432 F2d 984; State v Cook, 115 Ariz 188; People v Ramey, 16 Cal 3d 263, cert den 429 US 929; People v Wolgemuth, 43 Ill App 3d 335).
As the majority notes, proper resolution of these cases hinges on the balancing of two competing, but not necessarily irreconcilable, concerns: the individual’s interest in maximum security within his home, where he has a greater quantum of protection than in public (see United States v Watson, supra; People v De Bour, 40 NY2d 210), and the interest of the State in apprehending felons and maintaining an orderly society. As noted, the Fourth Amendment was drafted to secure the right of privacy against any arbitrary governmental intrusion by taking that decision away from the police and placing it with a neutral Magistrate. But the protections afforded by the amendment are not absolute; instead, they are governed by a standard of general reasonableness (United States v Rabinowitz, 339 US 56, 70 [Frankfurter, J., dissenting]). In some instances where the exigencies of the moment will not tolerate the delay incident to obtaining a warrant, a warrantless entry *323 and arrest will satisfy this ultimate standard of reasonableness (see, e.g., Warden v Hayden, 387 US 294; Ker v California, 374 US 23; People v Hodge, 44 NY2d 553). In still others, an individual may simply be located in an area in which his reasonable expectations of privacy must be subsumed by the demands of the public weal. Thus, where an individual is exposed to public view, expectations of privacy are substantially diminished and warrantless arrests are reasonable (United States v Watson, 423 US 411, supra; Santana v United States, 427 US 38, supra).
But these are not cases where the exigencies of the circumstances would not brook delay or where the arrests were effected in a public place. When an individual is safely ensconced within the confines of his home, special considerations áre brought to bear. It merits little repetition or citation of authority but to note that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed” (United States v United States Dist. CL, 407 US 297, 313). The sanctity of a private home is traditional to our Anglo-Saxon heritage (Coke, Third Institutes, p 162), and the Constitution itself points to the proper procedure to be followed in intruding upon this precious sanctuary. That basic principle — the constitutional guarantee that, except in a few jealously guarded circumstances, assures citizens of the privacy and security of their own homes unless a judicial officer should determine otherwise — is applicable not only in cases of entry to search for and seize property, but in instances of entry to search for and seize a person as well. Indeed, the Fourth Amendment itself speaks of searches and seizures of both persons and property in indistinguishable terms. It is illogical at this juncture for the court "to pay homage to the considerable body of law that has developed to protect an individual’s belongings from unreasonable search and seizure in his home, and at the same time assert that identical considerations do not operate to safeguard the individual himself in the same setting” (People v Ramey, 16 Cal 3d 263, 275, supra).
Nor would an onerous burden be placed upon the police by requiring them to obtain approval of a judicial officer prior to their nonconsensual entry into a suspect’s home in the absence of extraordinary circumstances. On the contrary, what imposition of a warrant requirement would accomplish would be the minimization of nonconsensual entry into the home by *324 overzealous police officers who may occasionally lose sight of the citizen’s expectation of privacy. Thus, the warrant requirement would permit a neutral Magistrate to make the decision whether to authorize arrest, just as he must do in the search and seizure context, rather than leave this decision to the ofttimes colored determinations of the police. As Justice Jackson has noted (Johnson v United States, 333 US 10, 13-14): "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate’s disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people’s homes secure only in the discretion of police officers. Crime, even in the privacy of one’s own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.”
Lastly, the court relies on the existence of statutes and the American Law Institute imprimatur codifying the common-law rule authorizing warrantless arrests in private homes. To be sure, the statutory authority of a police officer to make a warrantless arrest in this State has been in effect for almost 100 years, but neither antiquity nor legislative unanimity can be determinative of the grave constitutional question presented here (see Brown v Board of Educ., 347 US 483, 490-495; Walz v Tax Comm., 397 US 664, 678) and can never be a substitute for reasoned analysis.
Although I subscribe to the well-reasoned exegesis of Judge Wachtler concerning the majority’s misconception of the inevitable discovery rule, I cannot agree that the facts in the Payton case were so compelling as to allow the police to dispense with a warrant prior to their forcible entry into *325 defendant’s apartment. The police were well aware of defendant’s identity and place of residence the day before their warrantless break in. In the intervening period they had ample opportunity to secure the approval of a detached judicial officer. Moreover, even on the day of the forcible entry, the police were compelled to delay even further while waiting for the arrival of officers from the Emergency Services Department — during which time they again could have secured the necessary warrant. Even barring that course of action, the police could simply have staked out the apartment while waiting for a judicial officer to authorize entry into the home. The difference between action which would have been constitutionally proper and that which was taken is not slight. Had the police in fact obtained a warrant, limiting the scope of their activities after entry, their patently illegal actions in conducting a full-blown search of the premises might have been avoided (cf. Mincey v Arizona, 437 US 385, 393-395).
In sum, a serious incongruity between the Fourth Amendment protections applicable to search and arrest has now been created. If the guarantee afforded by the Fourth Amendment is to remain viable, the police must be required, in absence of exigency, to obtain a warrant from a disinterested judicial officer before invading domestic perimeters for whatever purpose. The abuses which might result from the holding of the majority are legion. Probable cause in the eyes of a police officer is a somewhat amorphous concept and the privacy of our citizenry is far too cherished a right to be entrusted to his discretion. Where there is no warrant authorizing entry into the home and no circumstances necessitating immediate police action, it is constitutionally imperative to preclude law enforcement officers from effecting a forcible or nonconsensual entry into the home to make a felony arrest.
Accordingly, I vote that the orders of the Appellate Division should be reversed and, in each case, a new trial granted.
Chief Judge Breitel and Judges Jasen and Gabrielli concur with Judge Jones; Judges Wachtler, Fuchsberg and Cooke dissent and vote to reverse and order a new trial in separate dissenting opinions.
In People v Payton: Order affirmed.
Chief Judge Breitel and Judges Jasen and Gabrielli concur with Judge Jones; Judges Wachtler and Fuchsberg *326 dissent and vote to reverse and dismiss the indictment in separate dissenting opinions; Judge Cooke dissents and votes to reverse and order a new trial in another dissenting opinion.
In People v Riddick: Order affirmed.