**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Nelson Edgar EMMENS, Defendant–Appellant.**

**No. 89–5152.**

United States Court of Appeals, Eleventh Circuit.

Feb. 7, 1990.

---

John W. Thornton, Jr., Thornton & Rothman, P.A., Miami, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Miami, Fla., Linda Collins Hertz, Harriet R. Galvin, David F. Axelrod, Asst. U.S. Atty., for plaintiff-appellee.

* Honorable E.B. Haltom, Jr., U.S. District Judge for the Northern District of Alabama, sitting by

Before FAY and EDMONDSON, Circuit Judges, and HALTOM *, District Judge.

EDMONDSON, Circuit Judge:

A warrantless search of defendant Nelson Edgar Emmens' airplane disclosed three hundred kilograms of cocaine. United States Customs agents arrested Emmens and charged him with two crimes: possessing with intent to distribute cocaine, a violation of 21 U.S.C. § 841(a)(1); and importing cocaine into the United States, a violation of 21 U.S.C. §§ 952(a) & 960(a)(1). After the district court denied Emmens' motion to suppress the cocaine, Emmens pleaded guilty to the importation charge. Pursuant to the plea agreement, the Government dismissed the possession charge. Emmens reserved the right to appeal the denial of his motion. The issue before this court is the validity of the warrantless search of Emmens' airplane. We uphold the search and affirm the conviction.

Emmens agrees that he piloted a small airplane across the Gulf of Mexico in a northeasterly direction; that he crossed the border of the United States into Florida; and that he did not stop the plane until after he landed at an airstrip which abuts his home in Florida. Customs agents, working with Drug Enforcement Agency ("DEA") officers, had continuously tracked Emmens' flight, following tips from informants that Emmens would be bringing cocaine from Colombia. The Customs agents allowed Emmens to land and to park the plane in Emmens' private hangar before landing their helicopter and approaching Emmens. The agents held back to avoid any risk that Emmens would take off and escape.

The hangar was about sixty feet from Emmens' house and was joined to the

designation.

house by a driveway and a walkway. The house and the hangar were painted the same color and had the same shingles, shutters, and landscaping. The hangar building contained a place for parking the airplane, a three-car garage, a small workshop, and a small office. The Emmens family did not sleep in the hangar building, but made several trips there each day to retrieve items that were stored there, such as cleaning supplies and soft drinks. Emmens' 2.2–acre property, including the hangar building, was enclosed on three sides by a hedge; the fourth side abutted the grass airstrip. Emmens did not own the airstrip; it was a private community airstrip centrally located for use by subdivision residents.

When Customs agents approached Emmens, he was out of the plane and leaving the hangar. Before the agents could say anything, Emmens immediately lay on the ground in spread-eagle fashion with his legs across the threshold of the hangar. Emmens had apparently activated the hangar's electric door closer, and Customs agents stopped the door from closing so that it would not injure Emmens' legs. Customs agents could see the plane through the open door.

After handcuffing Emmens—to protect agents from Emmens and to protect Emmens from being hurt should he make any overt movements—Customs Agent Gary Pior entered the hangar by means of the open door. Through the window of the plane, Pior saw that someone had removed the plane's rear seat, and he saw duffel bags where the seat would have been. Pior opened the plane's cabin door and put his head inside the plane. He then opened one of the twelve duffel bags and observed individually wrapped packages which his experience indicated could contain contraband. Pior field tested the substance in the packages and concluded that it was cocaine. By this time DEA agents were also on the scene, but no DEA agents participated in the search of the airplane. Neither Customs nor DEA searched the hangar.

The district court conducted two hearings on Emmens' motion to suppress the cocaine. After the first hearing, at which Customs and DEA agents testified, the court said "[t]he mere fact that a border entry had been made makes the search reasonable." The evidence presented at the second hearing related to whether the hangar was part of the curtilage of Emmens' home. Without deciding this question, the district court ratified and confirmed its prior order.

The Government contends that the warrantless search of Emmens' plane was justified as a search at the functional equivalent of the border. We agree.

Border searches have long "been considered to be 'reasonable' by the single fact that the person or item in question had entered into our country from outside." *United States v. Ramsey*, 431 U.S. 606, 619, 97 S.Ct. 1972, 1980, 52 L.Ed.2d 617 (1977). That border searches comprise an exception to the mandates of the fourth amendment is well settled, and neither a warrant nor any level of suspicion is required to search vehicles, including aircraft, arriving in the United States. *United States v. Carter*, 760 F.2d 1568, 1576 (11th Cir.1985); *United States v. Bachner*, 706 F.2d 1121, 1128 (11th Cir.1983). A border search need not take place at the actual border, but may be conducted at any place that may be considered the functional equivalent of the border. *Carter*, 760 F.2d at 1576. "A border search may be conducted away from the actual border if: (1) there is a reasonable certainty that the object of the search has just crossed the border, (2) the search takes place at the first practicable point after the border was crossed, and (3) there has been no time or opportunity for the object of the search to have changed materially since the time of the crossing." *Id.*

■ Emmens' counsel admitted to the district judge that these three requirements were satisfied and that, under the same circumstances, had Customs searched the plane while it was on the airstrip, the search would have been a lawful border search. But Emmens argues that because the plane was in his private hangar, which Emmens characterizes as part of the curtilage of his home, Customs agents could not search the plane. Put another way, Em-

mens is asking this court to rule that, because the airplane—which would ordinarily be subject to a border search—reached an area located within the curtilage of Emmens' home before the first practicable time that Customs could conduct the search, Customs was prohibited from searching the plane without a warrant. Assuming the hangar was actually part of the curtilage of Emmens' home, we decline to rule as Emmens urges; instead we hold that Customs' search was reasonable given the circumstances.[1]

The record shows that Customs continuously tracked Emmens' plane as it flew over the ocean and crossed the United States border. As soon as Emmens parked the plane, Customs stopped Emmens and conducted the search. Customs agents allowed Emmens only enough time to park the plane in the hangar to prevent Emmens from flying away and escaping. This court has recognized that an airplane's mobility and 360–degree range of airborne escape routes justify Customs permitting a suspected smuggler to reach a secure location before confrontation. *See United States v. Brennan*, 538 F.2d 711, 721 (5th Cir.1976).[2]

A dwelling, together with its surrounding curtilage, is not always a sanctuary from law enforcement activity, even if the police act without a warrant. The Supreme Court has refused to permit a sus-

pect to defeat a warrantless arrest that has been set in motion in a public place—and which is otherwise proper—by the expedient of escaping to a private place. *See United States v. Santana*, 427 U.S. 38, 43, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300 (1976) (hot pursuit case). We similarly refuse to allow Emmens to cross the border in an airplane and then to thwart Customs' lawful right to search that airplane at the first practicable point by his parking the plane in a private place.[3] To hold otherwise would be to force Customs agents to play "tag" with suspected smugglers. Nothing in the fourth amendment mandates this kind of game playing. We hold that Customs' warrantless search of an airplane inside the curtilage of the suspect's home is a lawful search if all other requirements for a valid search of that plane at the functional equivalent of the border are satisfied, including the requirement that there has been no opportunity for the object of the search to have changed materially since the time of the border crossing.

The district court's denial of the motion to suppress and Emmens' conviction are AFFIRMED.

---

1. Under case law and statutory authority, Customs' search of Emmens' plane was lawful if the hangar was *not* part of the curtilage of Emmens' home. *See United States v. Lueck*, 678 F.2d 895, 902 (11th Cir.1982) (warrantless search of car that was parked inside hangar upheld where suspect crossed border in airplane, parked plane in hangar, and then transferred packages from plane to car; hangar was located at airport and suspect as lessee had exclusive control over hangar); 19 U.S.C. § 1595(b) (1982) ("Any person authorized by this chapter to make searches and seizures ... may, if deemed necessary ... enter into or upon or pass through the lands, inclosures, and buildings, other than the dwelling house, of any person whomsoever, in the discharge of his official duties.").

The Government argues that section 1595(b), quoted above, justified the search in this case because it permitted Customs agents to enter any building located on Emmens' property other than his dwelling house, even if that other building was curtilage. Because we affirm the denial of Emmens' motion to suppress on other grounds, we need not rely on 1595(b) to justify

the search in this case. We note, however, that 1595(b) does not limit any authority granted Customs by other sources to make warrantless searches. *Cf. United States v. Jacobson*, 647 F.2d 990, 993–94 (9th Cir.1981) (section 1595(b) provided specific authorization to Customs agents to conduct otherwise reasonable warrantless search that required entry into private driveway).

2. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

3. We recognize that *Santana* is not identical to this case because there the arrest was justified by some suspicion of wrongdoing. The element that justifies searches at the functional equivalent of the border and makes such searches constitutionally reasonable is the crossing of the border.