# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Fareed Makeen

July 11, 2003

Case No. (Criminal) CR03-0215

BY JUDGE LYDIA CALVERT TAYLOR

This matter came before the Court on an Amended Notice of Motion to Suppress dated June 2, 2003, wherein Fareed Makeen, Defendant, claimed that his arrest was improper and that therefore the drugs found during the search following that arrest must be suppressed as fruit of the unlawfully conducted arrest. Specifically he claims that the arrest was warrantless and made either inside Defendant's home or the curtilage thereof. After considering the facts presented and the governing law, the Court has determined to deny the motion.

## Facts

On October 16, 2002, Investigator F. E. Curott was assigned to investigate the activities at Defendant's residence. Curott had received information from an intelligence source that stated that there was an odor of marijuana emanating from, and a significant amount of foot traffic going to and from, Defendant's apartment. These facts suggested to Curott that Defendant may

have been selling narcotics from his residence. Through a record check using NCIC (National Criminal Information Center), Curott discovered that Defendant had an outstanding warrant for his arrest due to an alleged probation violation in Chesapeake, Virginia.

Based on the intelligence source and outstanding warrant, Curott and Investigator Dickason went to the apartment. From their parked car, they observed several people walking into Defendant's apartment, leaving the door open, and then leaving shortly thereafter. Defendant kept his apartment door wide open and could be seen clearly even when inside. Curott and Dickason called for a marked police car, and then they went up the outside steps leading to Defendant's and one other apartment. By the time they reached the landing or porch shared by the two apartments, Defendant had come out onto the common area landing to speak to them. The officers identified themselves and asked Defendant his name, to which he first replied that his name was Wayne Brewer. Officers then called to an adolescent inside the apartment, asking what Defendant's name was, and were told that he was Fareed Makeen. At this time, Defendant admitted his identity and was arrested as he stood just outside the threshold of his door, on the landing. Two bags of marijuana and $180 were found on his person during the search incident to the arrest. After the search, Defendant was read his *Miranda* rights. The arrest was made on the landing, although one of the officers stepped onto and beyond the threshold about a foot and a half, in order to get behind Defendant to handcuff him.

After being arrested and searched incident to arrest, Defendant refused to sign a broad search consent, but orally agreed to allow the officers to search a portion of the apartment. The officers stated they could not arrange a search consent in such a limited way and informed Defendant that they would need to get a search warrant. In an effort to cooperate, Defendant then volunteered to show the officers a bedroom he identified as his own room. That room had crack cocaine, marijuana, packaging materials, and scales in plain view. Defendant also directed the officers to a gun on a shelf underneath a plastic bag.

Defendant has since filed a Motion to Suppress all evidence obtained through the arrest, and he amended this motion on June 2, 2003. Defendant contends that the arrest itself was in violation of the protections guaranteed by the Fourth Amendment because, even if based on probable cause, the arrest could not constitutionally be effectuated in his home, but had to be carried out in a public place because the police had no warrant with them. Therefore, Defendant contends that all of the evidence obtained through the arrest must

be suppressed as fruits of an illegal arrest in his home without an arrest or search warrant.

## Discussion

At issue is whether Defendant's Fourth Amendment rights were violated by his arrest such that the evidence seized pursuant to that arrest must be suppressed. The basis upon which the arrest was made is a Chesapeake warrant, which the Commonwealth claims justified the arrest as pursuant to an outstanding warrant from another jurisdiction.[1] The officers learned of this warrant through a NCIC search. Defendant claims that he was arrested in his home or the curtilage thereof without a warrant, because the police did not have the warrant with them. After hearing arguments and doing further research, this Court holds, first, that the officers had the right to make the arrest stemming from the Chesapeake warrant, and, as such, it was not a warrantless arrest. Even assuming *arguendo* the Defendant was correct that the arrest was on probable cause of violation of probation, but was considered warrantless because the warrant was not in the officer's hands, this Court secondarily holds that the place and manner in which it was carried out did not invade the curtilage and thus did not require a warrant. Defendant was not in a place where he had a reasonable expectation of privacy on the landing, or common area, outside his apartment under the facts of this case and thus was

---

[1] Other than the Chesapeake warrant, the officers did not have probable cause to arrest and search in the manner that they did. The facts regarding defendant's activity that day gave the officers no more than a reasonable suspicion of the sale of narcotics. Therefore, the only basis on which the arrest is proper is the warrant from another jurisdiction. Under U.S. and Virginia case law, Defendant could have been legally detained and questioned. When an officer does not have probable cause to make an arrest, or a warrant, he may briefly detain someone for investigation without probable cause if the officer can rationally infer from the facts "a reasonable suspicion of criminal activity." *Murphy v. Commonwealth*, 264 Va. 568, 573 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). In detaining the individual, the officer is permitted to pat down the suspect for weapons to ensure the safety of the officer. *Murphy* at 573-74 (citing *Adams v. Williams*, 407 U.S. 143, 146 (1972)). However, no evidence has been suggested that this was the type of search that was done. On the contrary, it has been presented that a full search incident to an arrest was performed on Defendant once he admitted to his identity. Affidavit for Search Warrant at 2.

not deserving of Fourth Amendment protection from a warrantless arrest in his own home or the curtilage thereof.

## Warrant From Another Jurisdiction

Virginia enables arrests of individuals wanted, by warrant, in other jurisdictions according to the following statute:

> Such officers may arrest, without a warrant, persons duly charged with a crime in another jurisdiction upon receipt of a photocopy of a warrant, telegram, computer printout, facsimile printout, a radio, telephone or teletype message, in which photocopy of a warrant, telegram, computer printout, facsimile printout, radio, telephone or teletype message shall be given the name or a reasonably accurate description of such person wanted and the crime alleged.

Va. Code Ann. § 19.2-81. The Court reads this statute to mean that an officer may make an arrest, without a warrant in hand, if the officer has been informed of the warrant either through a photocopy of it, or through telegram, computer printout, facsimile printout, radio, or telephone/teletype message. The arrest, in this statute, is still pursuant to a warrant issued by a magistrate. In the instant case, the officers discovered the existence of the Chesapeake warrant through NCIC before confronting Defendant and arresting him, even though they did not physically receive a printout or facsimile of the warrant until the day after the arrest. NCIC provided the officers with the required information including the name, a description of Defendant, and the crime alleged, a probation violation. Although there is no case law in Virginia stating that this statute extends to NCIC findings, the statute broadly authorizes arrest after a warrant is issued elsewhere based on verification of the warrant's existence through a number of electronic means, including "radio" or "telephone" message. This Court reads the wording to encompass a computer message, via NCIC. According to the evidence, NCIC computer information includes the statutorily required information including charge, date, issuing jurisdiction, and the name and a brief description of the person charged in the warrant.

Little sense could be made of this statute if an officer could not make an arrest pursuant to information found through NCIC. There would be no question concerning the validity of the arrest if the officers had printed the information. It would elevate form over substance to add such an ad hoc requirement to the statute. The information on a computer screen, such as that gained through NCIC, is no different from that given in a computer printout or teletype message. If a NCIC report could be the basis of an arrest if someone using NCIC had radioed that information to the officer or if he had been handed a paper printout of the NCIC information, it would be absurd if he could not base the arrest on his *own* use of NCIC.

Although there is no case law addressing the application of NCIC to the enabling statute, there is case law suggesting that it is reasonable for an officer to rely on electronic databases such as NCIC. *Arizona v. Evans*, 514 U.S. 1 (1995), dealt with use of a similar electronic database. In *Evans*, an officer who had pulled over a vehicle for a traffic violation checked Evans' record in his cruiser, and the computer revealed a warrant for Evans' arrest. *Id.* at 4. Therefore, the officer arrested Evans and, while making a search of the car incident to that arrest, found marijuana. Later investigation revealed that the warrant had been quashed and should have been removed from the computer database. *Id.* Nevertheless, the Court found the search and seizure constitutional: "There is no indication that the arresting officer was not acting objectively reasonably when he relied upon the police computer record." *Evans*, 514 U.S. at 16. The Court further stated that the officer's actions were not only objectively reasonable, but that limiting an officer's ability to act on such listings of warrants would interfere with an officer's ability "to do his duty." *Id.* at 11-12. *Accord Crowder v. Commonwealth*, 213 Va. 151, 153 (1972) ("[A]n officer has probable cause, and indeed the legal duty, to arrest upon knowledge of the existence of an unexecuted felony warrant for the suspect.") (citations omitted).

Unlike in *Evans*, where the Court ruled that it was reasonable for the officer to rely on the computer-listed warrant even though the listing was found to have been a mistake, no defects in the warrant or improper listing are even alleged in the instant case. The officers acted reasonably upon the warrant as listed, which in this case in fact existed, was proper and had not been quashed or withdrawn.

An unpublished opinion from the Fourth Circuit, although concededly having no precedential value, is persuasive in its reasoning. That federal appellate court upheld the validity of an arrest based on a computer listing of a

warrant from a different jurisdiction on a system similar to NCIC, although that warrant turned out to have been mistakenly listed. *United States v. Williams*, No. 97-4849, 1998 U.S. App. LEXIS 1051 (4th Cir. 1998). In *Williams*, the officer stopped Williams for speeding and radioed the Sheriff's office to check for outstanding warrants. *Id.* at *2. Two checks were done: one through the Sheriff's Office computer system and the other through the Maryland Interstate Law Enforcement System. *Id.* at *2-3. After being told by the Sheriff's Office of an outstanding warrant, the officer made the arrest and found a gun in plain view. *Id.* at *3-4. After seizing the gun, he was radioed from the office that the warrant for which he had just arrested Williams should have been cleared from the computer, but he kept Williams in custody because of the gun he had discovered. *Id.* at *4-5. The Fourth Circuit reasoned that to force the officer to ignore such computer records "would be to create a situation in which the officers could not do their duty without fear of censure." *Id.* at *10. As in *Evans*, the warrant should no longer have been listed, but it was still reasonable for the officer to rely on the listing to make the arrest.

It is persuasive that both courts ruled that acting on such listings of outstanding warrants, such as NCIC, even though later found to be faulty, is reasonable, and thus constitutional, even if one reads the Virginia statute as not explicitly including NCIC computer listings.[2] Limiting the statute by ruling that NCIC is outside its terms would create oddities such as requiring an officer to print what is seen on a computer screen in order to meet the statutory requirements, even though less reliable forms of verification are allowed. Therefore, "[i]t would be a strained construction of the law to vitiate an arrest made under such circumstances, notwithstanding a statute which permits the arrest had the required information and allegation come to him by radio, telegram, or teletype." *Crowder v. Commonwealth*, 213 Va. 151, 153 (1972) (State trooper in Richmond had personal knowledge that warrants had been issued in Petersburg for defendant's arrest, and thus the arrest was lawful and the evidence seized from defendant's person "following his lawful arrest was properly admitted in evidence.").

In sum, the arresting officers did not have a copy of the warrant, but, even if the arrest thus should be termed "warrantless," a warrant in fact existed for the arrest of Defendant, which had been issued by a magistrate. *Id.* at 589. Therefore, the arrest was made pursuant to probable cause, as determined "by a neutral and detached magistrate instead of being judged by the officer

---

[2] The warrant in question in this case, of course, was not faulty.

engaged in the often competitive enterprise of ferreting out crime." *Id.* at 586 (citing *Johnson v. United States*, 333 U.S. 10, 13-14 (1948)). Thus, the arrest and search were not warrantless as proscribed in *Payton*.

### Warrantless Arrest in Home

The existence of a warrant for Defendant's arrest is needed for the seizure to have been lawful if it took place in his home or its curtilage. If Defendant was arrested within his home, or the curtilage thereof, without a warrant, the arrest would violate the constitutional rule set forth in *Payton v. New York*, 445 U.S. 573 (1980). *Payton* held that, absent exigent circumstances, a warrant is required in order to make an arrest inside one's home. However, not only do the facts in this case not constitute a "warrantless" arrest, *supra*, but the arrest itself did not take place inside Defendant's home or the curtilage. Defendant was not within his home, or the curtilage thereof, if he was arrested in the doorway of his apartment, he having left the door open and voluntarily stepped onto the landing. "What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." *United States v. Santana*, 427 U.S. 38, 42 (1976) (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)). The Supreme Court addressed this issue in *Santana*. The facts of *Santana* are as follows:

> [Sergeant] Pruitt and the others then drove approximately two blocks back to 2311 North Fifth Street. They saw Santana standing in the doorway of the house with a brown paper bag in her hand. They pulled up to within 15 feet of Santana and got out of their van, shouting "police," and displaying their identification. As the officers approached, Santana retreated into the vestibule of her house. The officers followed through the open door, catching her in the vestibule.

427 U.S. at 40. Because the officers could see Santana from a public place, she was not within an area subject to Fourth Amendment protection. *Id.* at 42.

In the present case, the doorway was viewable from a public street and, therefore, was as exposed to the public as if Defendant had been standing on the public street itself. Defendant could not have had any expectation of privacy while standing in his doorway or any part of his apartment viewable from the street. Further, assuming the officers had probable cause through the

warrant from Chesapeake, *Santana*'s holding means that they could have pursued Defendant within his home without a warrant in order to make the arrest as part of hot pursuit. 427 U.S. at 43 ("The fact that the pursuit here ended almost as soon as it began did not render it any the less a 'hot pursuit' sufficient to justify the warrantless entry into Santana's house. Once Santana saw the police, there was likewise a realistic expectation that any delay would result in destruction of evidence."). The officers undoubtedly could have arrested Defendant based on the Chesapeake warrant, which provided probable cause, while he was in a public place. And if the officers did have to follow Defendant into a private place to make the arrest, Defendant could not have avoided the arrest through the simple expedient of retreating to a private place. *Id.*

Despite this rather clear case law, Defendant relies on *Jefferson v. Commonwealth*, 27 Va. App. 1 (1998), in order to claim that he was within the curtilage of his home, an area subject to Fourth Amendment protection. Amended Notice of Motion to Suppress ¶ 6. In *Jefferson*, the officers went to Jefferson's backdoor because they heard a commotion. *Id.* at 8. While the officers were in the backyard, Jefferson emerged from his backdoor and stood right in front of it. *Id.* At this point the officers identified Jefferson and arrested him. *Id.* The court noted that the generally protected area known as the curtilage of a home "is the area immediately surrounding the home." *Id.* at 16. However, the court also noted that what is considered part of the curtilage of a home for Fourth Amendment purposes is determined on a case by case analysis considering the following factors:

> [C]urtilage questions should be resolved with particular reference to four factors: [1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put and [4] the steps taken by the resident to protect the area from observation by people passing by.

*Id.* at 16-17 (quoting *United States v. Dunn*, 480 U.S. 294, 301 (1987)). The Virginia Court of Appeals in *Jefferson* noted that the backdoor could not be viewed by pedestrians or drivers and that backyards such as this one are typically enclosed. 27 Va. App. at 17. Clearly, this fact scenario is not analogous to Defendant's case. Defendant was standing on his landing and in his doorway and, when briefly inside his house, was visible though the

windows and door making transactions with individuals in areas that were clearly viewable from a public place, the street in front. Further, the area in front of the doorway was a common area of the apartment complex, shared with others, and not an area in which one would expect privacy. In fact, the Defendant had, during the transactions viewed by the police upon arrival, left his front door and curtains open so that he could be seen in the front room sitting on his couch even while still inside.[3] Defendant can make no claims of being arrested in his home, as he was voluntarily outside when arrested, where he had no expectation of privacy.

## Summary

In conclusion, interpreting the statute to include NCIC within its meaning, thus enabling arrests pursuant to warrants from other jurisdictions when shown on NCIC, is a reasonable interpretation. Failing to interpret the statute in such a way would limit an officer's ability to act reasonably, putting unnecessary restraints on police activity to arrest charged and wanted felons. In addition, in regard to the warrantless arrest claim, this was not a warrantless arrest because a magistrate had previously found probable cause to make the arrest. Additionally U.S. Supreme Court case law finds reliance on computer listings, even mistaken ones, of warrants from elsewhere to give reasonable justification for arrest. Even if a court were to term this a warrantless arrest, the arrest was not made in a place where Defendant could have an expectation of privacy and so did not require a warrant. All that was required to make this arrest was probable cause, which had been determined by a neutral magistrate issuing a warrant in Chesapeake prior to the arrest in Norfolk.

The Court will enter an order denying Defendant's motion to suppress and noting the Defendant's exception to its ruling.

---

[3] Defendant's claim that the officers did not have probable cause to make the arrest on what they saw of his suspected drug dealing is correct, but he was in fact arrested on the Chesapeake probation violation warrant, which was issued by a magistrate on probable cause.