USA v Williams

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

**<u>S U M M A R Y   O R D E R</u>**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse at Foley Square, in the City of New York, on the 30th day of May, two thousand fourteen.

Present:     AMALYA L. KEARSE,
             CHESTER J. STRAUB,
             SUSAN L. CARNEY,

                     <u>Circuit Judges</u>.

_____

UNITED STATES OF AMERICA,

                          <u>Appellee</u>,

                    - v. -                                No. 13-2043-cr

RALSTON WILLIAMS, aka Chris,

                     <u>Defendant-Appellant</u>.
_____

For Appellant:          Robert F. Kappes, Silvester & Kappes, Hartford, CT

For Appellee:           Sarah P. Karwan, Sandra S. Glover, Ass't U.S. Att'ys, Deirdre M.
                        Daly, U.S. Att'y, New Haven, CT

Appeal from the United States District Court for the District of Connecticut.

This cause came on to be heard on the record from the United States District Court for the District of Connecticut, and was submitted by counsel.

ON CONSIDERATION WHEREOF, it is now hereby ordered, adjudged, and decreed that the judgment of said District Court be and it hereby is affirmed.

Defendant Ralston Williams appeals from a May 14, 2013 judgment of the United States District Court for the District of Connecticut, convicting him, following a jury trial before Vanessa L. Bryant, Judge, of conspiracy to possess with intent to distribute and to distribute heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C); possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and sentencing him principally to 168 months' imprisonment. On appeal, Williams contends (A) that the district court should have granted his Fourth Amendment motion to suppress narcotics and other evidence seized from him on September 7, 2011, by members of a United States Drug Enforcement Administration task force (the "agents") during a warrantless search of the condominium residence of his coconspirator Bruce Dais, and (B) that, in calculating his Guidelines sentencing range, the court made erroneous findings as to his role in the criminal activity and the quantity of heroin involved. We assume the parties' familiarity with the underlying facts and procedural history of the case.

A. The Motion To Suppress

In opposition to Williams' motion to suppress the physical evidence seized from him on the ground that it was seized in violation of his rights under the Fourth Amendment, the government argued, inter alia, that exigent circumstances justified both the warrantless entry into the Dais home, because the agents were in hot pursuant of Dais, and a protective sweep of the residence to prevent any occupants from destroying evidence and endangering the safety of persons on the premises. (See Government's Memorandum in Opposition to Defendant's Motion to Suppress, dated April 26, 2012, at 10-14.) Although the evidence before the district court at the hearing on Williams's motion to suppress was not sufficient to support the denial of his motion on these bases, "[i]t is settled law that the validity of an arrest or search can be supported by evidence which was adduced at trial even though this was not presented at the pretrial suppression hearing," United States v. Canieso, 470 F.2d 1224, 1226 (2d Cir. 1972). The evidence at Williams's trial provided such support.

The warrant requirement of the Fourth Amendment "is subject to certain reasonable exceptions." Kentucky v. King, 131 S. Ct. 1849, 1856 (2011). These include (1) the "'hot pursuit'" exception, under which "a suspect may not defeat an arrest which has been set in motion in a public place," on the basis of

probable cause, "by the expedient of escaping to a private place," United States v. Santana, 427 U.S. 38, 43 (1976); (2) the exigent circumstances exception, which "permit[s] police officers to conduct an otherwise permissible search without first obtaining a warrant" in order "to prevent the imminent destruction of evidence," Kentucky v. King, 131 S. Ct. at 1854, 1856 (internal quotation marks omitted); (3) the "protective sweep" exception, which "permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene," Maryland v. Buie, 494 U.S. 325, 337 (1990); see also United States v. Oguns, 921 F.2d 442, 446 (2d Cir. 1990) (such protective sweeps of a home may be incident to "arrests made outside of the home"); and (4) an "exception for searches incident to arrest [that] permits the police to search a lawfully arrested person and areas within his immediate control," Smith v. Ohio, 494 U.S. 541, 543 (1990).

At Williams's trial, uncontradicted evidence--testimony and a recorded telephone conversation-- established that on September 7, 2011, coconspirator Alana Fiorentino, who had been arrested and had begun cooperating with the agents, telephoned a number that she normally used to reach either Williams or coconspirator Jason Brodsky, in order to purchase heroin; Williams answered and told her to meet him at Dais's condominium. Fiorentino then drove to Dais's condominium complex with agents, who observed Dais repeatedly exiting and entering his condominium unit and apparently conducting hand-to-hand drug transactions in the parking lot. The agents suspected that at least one of Dais's coconspirators was inside the residence. (See Gov't App'x at 73-77, 208-11, 284-89, 305, 320.) When agents moved to arrest Dais, he fled into his home and, with agents in pursuit, exited through the back. (See id. at 79-80, 171, 291-96, 306-08, 465-70.) Some agents remained in the residence and made a protective sweep "to make sure that the place was safe" and to determine "if there's a person in there who happens to have a weapon." (Id. at 308-09 (testimony of Connecticut State Police Detective Christopher Walsh).) This evidence amply supports the conclusion that the agents reasonably suspected that someone inside the Dais residence might threaten the agents' safety or destroy evidence. The protective sweep did not violate the Fourth Amendment.

During the sweep, agents found Williams asleep on a sofa with a plastic bag of substances that appeared to be heroin and crack cocaine "sitting right on his lap." (Id. at 311 (Walsh testimony).) Plainly, there was probable cause to arrest Williams; the subsequent search of Williams's person, which produced additional physical evidence, was permissible as it was incident to his arrest.

In sum, the evidence at Williams's trial was ample to show that the warrantless entry, arrest, and search were permissible.

B. The Sentencing Challenges

Williams challenges two aspects of the district court's calculation of his Guidelines sentencing range: offense-level increases for his role in the conspiracy and for the quantity of narcotics involved. Reviewing the district court's interpretation of the Guidelines de novo and its findings of fact for clear

-3-

error, see, e.g., United States v. McGregor, 11 F.3d 1133, 1138 (2d Cir. 1993), we see no error.

The district court increased Williams's offense level by two steps pursuant to Guidelines § 3B1.1(c), finding that he supervised Brodsky and others. See United States v. Garcia, 413 F.3d 201, 223 (2d Cir. 2005) ("a defendant need only manage or supervise a single other participant to warrant a § 3B1.1(c) enhancement" (internal quotation marks omitted)). That finding was supported by the trial testimony of both Fiorentino (see Gov't App'x at 168, 184-86) and Brodsky (see id. at 407, 409).

The trial evidence also supported the district court's estimate, see, e.g., United States v. Batista, 684 F.3d 333, 344 (2d Cir. 2012), as to the quantity of heroin involved. Brodsky testified that, in a typical day, he would sell 50 to 75 "bundles" of heroin for Williams, each bundle containing 10 bags (Gov't App'x at 409; see id. at 406); Fiorentino testified that Brodsky and Williams sold heroin to more than 50 customers every day (see id. at 169, 179-80). Their testimony and other evidence, including the quantity of heroin in each bag (e.g., an average of .0441 grams of heroin per bag in the bundles of heroin seized from Williams) and the duration of the conspiracy for at least several months (see id. at 169), provided a sufficient basis for the district court to find that at least one kilogram of heroin was involved.

We have considered all of Williams's contentions on this appeal and have found in them no basis for reversal. The judgment of conviction is affirmed.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court