United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 29, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 04-60125

---

WILLIE B. PAYNE,

Plaintiff-Appellant,

versus

CITY OF OLIVE BRANCH; SCOTT FULWOOD,
Individually and in His official
Capacity as a Police Officer of the
City of Olive Branch; JASON SAVAGE,
Individually and in His official
Capacity as a Police Officer of the
City of Olive Branch, Mississippi;

Defendants-Appellees.

---

Appeal from the United States District Court
for the Northern District of Mississippi

---

Before GARWOOD, JONES and PRADO, Circuit Judges.

PER CURIAM:[*]

Willie B. Payne (Payne) sued the City of Olive Branch,

Mississippi (the City) and City police officers Scott Fulwood

(Fulwood) and Jason Savage (Savage) for damages arising from a

---

[*]Pursuant to 5TH CIR. R. 47.5 the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

warrantless search of her home in the City and her arrest for disorderly conduct in resisting the search. Payne appeals the district court's grant of summary judgment in favor of all of the defendants. We affirm the summary judgment in favor of the City and Savage, and reverse the summary judgment in favor of Fulwood.

## Facts and Proceedings Below

Relevant portions of the various proffered versions of the facts are given here, starting with the events that are undisputed by the parties. At about 10 p.m. on June 13, 2000, Fulwood knocked on Payne's door, asking for her grandson, Barron Payne (Barron). A maroon Lexus that Barron sometimes drove was in the driveway, and a child was at the house.[1] Payne told Fulwood that Barron was not in the house, and Fulwood told Payne to let him in to search for Barron. Payne replied that Fulwood needed a warrant to search her home, and attempted to block his entry by closing the door. Fulwood said he did not need a warrant, entered the house, and arrested Payne. Payne was handcuffed and left in a squad car while Fulwood and other officers, including Savage and a canine unit, unsuccessfully searched her home for Barron. Fulwood took Payne to the police station at about 10:30 p.m., booked her for disorderly conduct, and released her just before midnight.

Barron was arrested in July of 2000 and charged with careless driving and resisting arrest. The charges against both Payne and

---

[1]There is some disagreement in the record as to whether the child was in the house or in the driveway.

Barron were eventually "retired to the file" over the objections of the defendants.[2]  Payne filed suit against the officers and the City, alleging unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments against the officers, "negligent training" in violation of the Fourth and Fourteenth Amendments against the City, state law false arrest, false imprisonment, intentional infliction of emotional distress and malicious prosecution claims against the officers, and a state law malicious prosecution claim against the City.

The excerpts from Fulwood's deposition in the record, along with Fulwood's dispatch log sheet for June 13, 2000, indicate that Fulwood was in his squad car in the parking lot of a grocery store in the City at 9:50 p.m., assisting Savage, who had made a traffic stop.  The following sequence of events was testified to by Fulwood in his deposition.  As he sat in the parking lot he saw a maroon Lexus driven by Barron come down the road at excessive speed, approximately 55 to 60 miles per hour (mph) in a 30 mph zone.  It was daylight when he saw Barron, and Barron looked directly at him, making eye contact.  Fulwood then drove out of the parking lot to pursue the Lexus.  After losing sight of the Lexus for a few seconds after it took a fork in the road, he saw the car stopped in Payne's driveway, and saw Barron getting a child out of it.  He

---

[2]  "Retired to the file" under Mississippi law means that prosecution of a case is suspended, but the "case is subject to recall and prosecution at any time thereafter at the discretion of the court." *Childers v. Beaver Dam Plantation*, 360 F. Supp. 331, 334 (N.D. Miss. 1973).

3

told Barron to stop, but instead Barron ran into the house, leading to the search and arrest described above.

The excerpts from Savage's deposition that were before the district court do not include any indication of whether Savage also saw a speeding Lexus pass the grocery store parking lot. The following events were testified to by Savage. During his traffic stop at the grocery store, he heard radio traffic indicating that Fulwood was pursuing a suspect running away on foot at Payne's address. After finishing the traffic stop, Savage proceeded to Payne's house to assist Fulwood. When he arrived at the house, a maroon Lexus with a door open was in the driveway, a child was standing in the driveway, and Fulwood was at the door of the house. Savage asked Fulwood who they were looking for, and Fulwood told him they were looking for Barron Payne.

According to the portions of Barron Payne's deposition that were before the district court, Barron did not admit to driving the Lexus on the day of the search. He testified that he did not think that he drove the Lexus that day or that he visited his grandmother late in the day, at least to the best of his recollection. Barron also testified that he had dropped his son off with the boy's mother early in the day and did not have him again that day. Mrs. Payne testified that both Fulwood and Savage appeared at her door initially, rather than just Fulwood.

In addition to the events occurring the night of the search, deposition testimony and other evidence before the district court

4

involved whether the City had any policies or customs with respect to warrantless searches. Fulwood testified that it was "common knowledge as an officer" that he could pursue into a private home someone who had committed a misdemeanor in his presence. He further testified that he did not know whether there were specific City policies covering the search. City police chief James Harris testified that he and "probably every officer" on the force would have entered Payne's house under the circumstances confronted by Fulwood. The police chief denied the existence of any city policy addressing this situation, however. Defense expert Charles Alexander opined in his report that the officers were "adequately trained and supervised," and that the City had "adopted and implemented acceptable law enforcement policies and procedures." The expert drew on his experience as director of training at the Mississippi Law Enforcement Officers' Training Academy, where Fulwood and Savage had each completed ten-week certification courses. Barron testified to his general belief that the police had been harassing him in numerous incidents, and Payne testified to having been told by Barron and her other grandson about police harassment of them and their friends.

In her pleadings and her response to the defendants' summary judgment motions, Payne argued that the officers violated her clearly established right to be free from warrantless searches of her home, and that the City was liable for the officers' actions because of negligent training of the officers and deliberate

5

indifference to Payne's rights.  In their answer and their motion for summary judgment, the officers argued that the search of Payne's home was not unconstitutional because Fulwood's pursuit of Barron was an exigent circumstance justifying the warrantless search.  Warrantless searches, though presumptively in violation of the Fourth Amendment, are constitutional in the event of sufficient "exigencies of the situation [making] that course imperative." *Coolidge v. New Hampshire*, 91 S.Ct. 2022, 2032 (1971).  The officers further argued that the arrest was constitutional because Payne's refusal to let them enter her house constituted disorderly conduct under Mississippi law, thereby giving them probable cause to arrest her.  Finally, the officers argued that they are entitled to qualified immunity whether or not there was a constitutional violation because they had "'arguable' probable cause" for the search and arrest.  The City argued that it was not liable even in the event of a constitutional violation by the officers because any such violation was not pursuant to any City policy.

In ruling on the summary judgment motions, the district court discounted Barron's testimony and assumed that the officers believed that they were pursuing Barron when (according to Fulwood) he fled into Payne's house.  The court held that the officers' warrantless search of Payne's home and subsequent arrest of Payne were not constitutional violations, so that there was no liability for the officers or the City.  Accordingly, the court granted the

6

officers' and the City's motions for summary judgment, and denied Payne's motion for partial summary judgment. Payne's state law claims were dismissed without prejudice to refiling in state court.

**Discussion**

## I.   *Standard of Review*

We review a district court's granting of summary judgment *de novo*, applying the same standards as the district court. *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 747 (5th Cir. 2001). In determining whether a jury could reasonably find for the nonmoving party, the evidence and justifiable inferences therefrom are to be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2513 (1986). In deciding a motion for summary judgment, the court must take into account the applicable substantive evidentiary burden. *Id.* at 2512-13. The appropriate evidentiary burdens for the claims against the officers and those against the City are discussed in the corresponding sections below.

## II.   *The Officers' Summary Judgment Motion*

Because the officers assert a defense of qualified immunity, Payne has the burden to show not only a violation of a constitutional right, but that the right was clearly established, such that under the specific circumstances no reasonable officer would have failed to realize that the complained-of actions taken by Fulwood and Savage violated Payne's constitutional rights.

7

*Estep v. Dallas County*, 310 F.3d 353, 360–61 (5th Cir. 2002). The officers argue that Fulwood's pursuit of Barron justified their search of Payne's home, or at least that there is not clearly established law to the contrary. The district court held that "whether an officer can enter a home without a warrant to pursue a fleeing suspect who committed a jailable misdemeanor in his presence" is not clearly established, and that the search was furthermore not a constitutional violation.

With respect to Savage, we agree that the record evidence does not suffice to show that all reasonable officers in his position would have realized that his conduct violated Payne's constitutional rights. In the case of Fulwood, on the other hand, we conclude that there is a genuine issue of material fact as to whether he reasonably believed that he was pursuing a suspect who had committed a misdemeanor. If Fulwood did not reasonably believe this, he would not be entitled to qualified immunity with respect to the search or the arrest, because under Mississippi law it is not a criminal offense to resist an officer making an unlawful search of one's home. *Deaton v. State*, 102 So. 175, 176 (Miss. 1924); *King v. State*, 149 So. 2d 482, 483–84 (Miss. 1963).

### A. *Officer Fulwood*

The justification proffered by Fulwood for the warrantless search of Payne's home relies critically on Fulwood's deposition testimony. In order for Fulwood to have qualified immunity based

8

on an exigent circumstance justifying the search, he must have reasonably believed that he was pursuing Barron, who had been speeding in the Lexus, or at least *someone* speeding in the Lexus. The evidence before the district court does not include any testimony from Savage or any other witness corroborating Fulwood's testimony that he saw Barron speeding in the Lexus. The presence of the Lexus at Payne's house does not speak to the question of whether anyone had been speeding in it (or whether Fulwood had observed that). Fulwood's justification for the search therefore depends largely on the credibility of his testimony.

The inconsistencies in Fulwood's testimony coupled with the fact that Barron did not admit to driving the Lexus that day lead us to conclude that a reasonable jury might find that Fulwood did not reasonably believe he was pursuing a speeding Lexus. For example, Fulwood testified that he saw Barron in broad daylight, even though it is otherwise undisputed that the events in question took place just before ten o'clock p.m. In the deposition excerpts (and other summary judgment evidence) before the district court, Fulwood makes no attempt to correct or explain his statement that it was daylight. Fulwood further contends that Barron looked directly at him and made "eye contact," as the speeding Lexus passed the parking lot where Fulwood was stopped in his patrol car. Given that Fulwood estimated the speed of the Lexus at 55 to 60 mph while his car was sitting still, Fulwood was in a parking lot

rather than next to the Lexus on the road, both people were in cars rather than either of them being out in the open, and it was nearly 10 p.m., the ability to make eye contact is at least questionable.

Barron's testimony that he was not driving the Lexus that day and that he did not go to his grandmother's house that evening is equivocal in that he qualified most statements by saying that at least he did not remember doing the things asked about. This testimony might not be sufficient to withstand summary judgment alone,[3] but in combination with the inconsistencies in Fulwood's testimony it gives rise to a genuine issue of material fact, at least on the present record.

### B. Officer Savage

According to the deposition excerpts that were before the district court, Savage learned from police radio traffic that Fulwood was pursuing someone fleeing on foot at Payne's house. After arriving at the house, he learned from Fulwood that the person was Barron Payne. The parts of Savage's testimony in the record do not exhibit inconsistencies like those in Fulwood's testimony. Furthermore, receiving information that a suspect is fleeing from a police officer on foot would allow an officer in Savage's position to reasonably assume that the suspect had

---

[3]The weakness of the testimony comes from the limited nature of the statement made, not the witness's credibility or lack thereof in making it. The district court's discounting of the testimony as "self-serving" was inappropriate because a court is not to make credibility determinations in deciding summary judgment motions. *Anderson*, 106 S.Ct. at 2513; *Goodson v. City of Corpus Christi*, 202 F.3d 730, 739 (5th Cir. 2000).

10

committed an arrestable offense, potentially a jailable misdemeanor or a felony.[4]

A warrantless search in pursuit of such a suspect is not a clearly established constitutional violation. Although numerous Supreme Court decisions have noted that "searches and seizures inside a home without a warrant are presumptively unreasonable" under the Fourth Amendment, *e.g., Welsh v. Wisconsin*, 104 S.Ct. 2091, 2097 (1984), "exigencies of the situation" making it imperative to proceed without a warrant constitute exceptions to the presumption, *Coolidge v. New Hampshire*, 91 S.Ct. 2022, 2032 (1971). "Hot pursuit" of a suspect is recognized as an exigency justifying a warrantless search, *United States v. Santana*, 96 S.Ct. 2406, 2409–10 & n.3 (1976), and Savage could have reasonably believed, based on the police radio traffic, that the officers were in hot pursuit of a suspect. The Supreme Court has subsequently described *Santana* as involving hot pursuit of a fleeing felon, and held that a warrantless entry into a suspect's home to arrest him for a *civil* traffic offense was prohibited by the Fourth Amendment. *Welsh*, 104 S.Ct. at 2097–2100. An officer hearing about a suspect fleeing an officer on foot could reasonably believe that a more serious offense was involved, however, such as a jailable misdemeanor or a felony. *Cf. Johnson v. Deep E. Texas Reg'l*

---

[4]In fact, an officer hearing radio traffic about a suspect fleeing on foot might be relatively unlikely to assume that the underlying offense was a traffic violation.

*Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004).

Savage is entitled to qualified immunity for the search as long as "a reasonable officer *could* have believed . . . [his] warrantless search to be lawful, in light of clearly established law and the information the searching officer possessed." *Johnson*, 379 F.3d at 301–02 (quoting *Anderson v. Creighton*, 107 S.Ct. 3034, 3040 (1987)). A reasonable officer in Savage's position could have believed the search to be lawful, for the reasons discussed above. There is nothing in the record to support a contrary conclusion. Such an officer could therefore also believe that the warrantless arrest of Payne was lawful, because under Mississippi law failing to obey the order of a police officer constitutes disorderly conduct. MISS. CODE ANN. § 97-35-9. As noted by the district court, the Supreme Court has held that an officer may arrest a person without a warrant if there is probable cause that the person committed any offense in the officer's presence. *Atwater v. City of Lago Vista*, 121 S.Ct. 1536, 1557 (2001). Payne did not sustain her burden of producing summary judgment evidence sufficient to support a finding that Savage lacked qualified immunity. Savage was therefore correctly granted summary judgment with respect to Payne's arrest and the search of her home.

Because genuine issues of material fact remain with respect to Fulwood's assertion of qualified immunity, we reverse the grants of

summary judgment to him and remand for further proceedings consistent with this opinion. The district court dismissed Payne's state law claims pursuant to 28 U.S.C. § 1367(c)(3) because it had dismissed all of Payne's federal claims. Since we reverse the dismissal of Payne's federal claims with respect to Fulwood, we also reverse the dismissal of Payne's state law claims against Fulwood.

## III. The City's Summary Judgment Motion

To establish liability under 42 U.S.C. § 1983 on the part of the City, Payne must show that any constitutional violation by the officers was done pursuant to City policy. "Policy" in this context means either an official policy adopted and promulgated by a city policymaker, or a "persistent, widespread practice" of officials or employees which "is so common and well settled as to constitute a custom that fairly represents municipal policy." *Johnson*, 379 F.3d at 309; *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). For a "custom" as described above to constitute a policy, a city policymaker must have either actual or constructive knowledge of it, where a policymaker is a lawmaking officer or "an official to whom the lawmakers have delegated policy-making authority." *Johnson*, 379 F.3d at 309; *Webster*, 735 F.2d at 841.

No evidence of an official policy regarding warrantless searches has been presented. In fact, to the extent Payne

13

discusses policy with regard to the search, it is to assert that the officers acted *contrary* to city policy (such as by not using lights and sirens and by persisting in an allegedly unjustified pursuit). Payne argues that Fulwood's assertion that his right to search Payne's house was "common knowledge as a officer," the police chief's statement that he and any officer would likely have done the same as Fulwood, and the City's alleged practice of leaving decisions on handling situations like that at Payne's house to the officers' discretion show the existence of a custom. However, given that there is no evidence that a search under any even arguably similar circumstances had ever happened in the City or by its officers before, this argument cannot establish the requirement that a custom involve a persistent, widespread practice. Payne's testimony indicates that on one prior occasion Savage came to her house with Fulwood's brother (also a police officer, it appears) looking for Barron. Although there is the similarity that the officers apparently did not give her a reason that they were looking for Barron, they did not force their way into her home on that occasion because she invited them in to look for Barron. There is simply no evidence of a persistent, widespread practice of officers insisting on warrantless searches of homes. Indeed, there is no evidence of *any* practice of even arguably unconstitutional searches of residences or businesses.

14

Even if the City's practice of leaving decisions on whether to search to an officer's discretion could constitute a policy, such a policy would not be facially unconstitutional, and Payne would therefore have to show that the City acted with deliberate indifference to the likelihood of constitutional violations. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001); *Johnson*, 379 F.3d at 309. The inadequate training alleged by Payne is a type of deliberate indifference claim. *Bd. of County Comm'rs v. Brown*, 117 S.Ct. 1382, 1390 (1997). A plaintiff must ordinarily "demonstrate at least a pattern of similar violations" to show deliberate indifference. *Johnson*, 379 F.3d at 309 (internal quotation omitted). Payne has not established such a pattern, since there is no evidence of any other searches even arguably like the one of her home. Nor is there any evidence of any particular training inadequacy as to these officers.

With regard to warrantless arrests, the City's brief acknowledges a police department general order stating that an officer may arrest a person without a warrant for offenses including "a breach of peace threatened or attempted" in the officer's presence. This order mirrors the language of Mississippi's disorderly conduct law, *see* MISS. CODE ANN. § 97-35-9, and is not in violation of the Fourth Amendment. Probable cause to arrest Payne might be lacking if the officers were found not to have reasonably believed they were conducting a lawful search,

15

since Payne's resistance would not constitute an offense if the search was unlawful. But in that event, the officers would not have been acting pursuant to the policy, because there would have been no breach of the peace threatened or attempted.

Because Payne has not established that any constitutional violations by the officers occurred pursuant to City policy within the meaning of 42 U.S.C. § 1983, the district court's grant of summary judgment in favor of the City is affirmed.

## Conclusion

Because on this record a genuine issue of material fact exists with regard to whether Fulwood is entitled to qualified immunity, the grant of summary judgment in favor of Fulwood is REVERSED, as is the dismissal of the state law claims against him. The grants of summary judgment in favor of Savage and the City and the dismissal of state law claims against them are AFFIRMED.

AFFIRMED in part; REVERSED and REMANDED in part.

16