MICHAEL E. KIRBY, Judge.
 

 |,
 
 STATEMENT OF CASE
 

 On May 7, 2007, the defendant, Karen A. Lala, was charged by a bill of information with possession of cocaine. She pled not guilty at arraignment. A hearing on defense motions was held on July 11, 2007, at which the trial court denied defendant’s motion to suppress the evidence and found probable cause. On October 9, 2007, the defendant elected trial by jury. Prior to trial, defendant filed a motion in limine seeking to prevent the State from introducing a spoon containing heroin residue. The trial court denied the motion on the basis that the spoon constituted
 
 res gestae
 
 evidence. The jury found the defendant guilty as charged, and she was sentenced to eighteen months at hard labor on November 8, 2007.
 

 STATEMENT OF FACT
 

 The testimony at trial and at the hearing on the motion to suppress the evidence reflects that on April 1, 2007, Officer Brian Sullivan and his partner, Sergeant Henry Laurent, were on patrol in the Fourth District. As Officer Sullivan approached the 500 block of Elmira Street, he drew his attention to Karen Lala who was in the middle of the street waving one arm in an attempt to get the ^attention of passing cars.
 
 [1]
 
 It appeared that she was attempting to get one of the vehicles to stop. Aso, Lala was staggering and appeared irate to Officer Sullivan. She was screaming, but the officer could not hear what she was saying. Officer Sullivan watched as the defendant exhibited this behavior for a few minutes while a few automobiles passed by.
 

 Officer Sullivan testified that they wanted to determine what the defendant was doing in the middle of the street attempting to stop vehicles and believed that she may have been intoxicated. He noted that there was a bar on the corner and that there had been problems with intoxicated people in the past. The officer also consid
 
 *608
 
 ered that the defendant could have been a prostitute.
 

 In any case, the officers approached the defendant in their marked unit. Officer Sullivan exited the vehicle and told the defendant to stop. Lala looked back at the officers and then ran towards the house located at 507 Elmira Street. Officer Sullivan pursued the defendant who entered the open doorway of the residence. The defendant looked back to see the officer approaching and attempted to slam the door shut. Officer Sullivan was able to stop the door from closing by placing his foot in the threshold, which resulted in his injuring his foot.
 

 Once inside, Officer Sullivan encountered the defendant in the living room where she had fallen. He testified that she was very irate and that he detected a strong odor of alcohol on her breath and observed that her eyes were quite bloodshot. Sullivan arrested the defendant for public intoxication and for resisting arrest. The officer issued a municipal summons in this regard.
 

 | sIncident to arrest, Officer Sullivan searched Ms. Lala’s purse and recovered one piece of crack cocaine and a spoon with brown residue.
 

 At trial, the parties stipulated that Officer William Giblin of the New Orleans Police Department Crime Lab would testify that the items submitted by Officer Sullivan for testing tested positive for cocaine and heroin.
 

 The defense called Leon Radkovich, the defendant’s stepfather. Radkovich testified that on the day in question, his stepdaughter left in the morning to pick up a water heater in the neighborhood. He stated that she was not intoxicated. He recalled that she returned to the house not long thereafter with the water heater in her truck. Radkovich testified that as the defendant was approaching the house two police cars came from around the corner and three officers ran into his house. Radkovich followed them inside. He was handcuffed and placed on the sofa. He then observed one of the officers take the defendant by the hair and pull her to the ground. From the couch, Radkovich heard the officers searching through drawers and otherwise rifling through the house. The defendant was seated next to him on the couch. She was crying hysterically, and one of the officers put a paint rag in her mouth.
 

 After the incident, Radkovich filed a complaint with the police department over his door being broken. He stated that the frame was broken from having been kicked in. The defense introduced a photograph depicting the broken latch on the door.
 

 The defendant testified in her own defense. She stated that upon returning to the house from picking up the water heater she went to the kitchen in the rear of the house. After pouring herself a drink of orange juice, she heard a loud bashing sound and then observed police officers coming at her. She stated that Officer l4Sullivan knocked her to the floor and handcuffed her. She stated that Officer Sullivan kept yelling “Where are the drugs, where are the drugs.” She observed as the officers went looking through the house for drugs.
 

 Lala questioned the officers about their actions until one of them put the rag into her mouth. They continued to question her about the location of the drugs until she heard one of the officers exclaim, “I got it.” At that point she was arrested for possession of cocaine.
 

 The defendant denied possessing any cocaine on the day in question. The defendant admitted that she had been convicted of felony theft in conjunction with a stolen car and that she was currently on parole
 
 *609
 
 for distribution of heroin. The defendant admitted being a heroin addict but asserted that she had been clean for seventeen months and had never failed a urine test while on parole.
 

 ERRORS PATENT
 

 A review of the record for errors patent reveals none.
 

 ASSIGNMENT OF ERROR NUMBER 1
 

 Defendant contends that the evidence should have been suppressed because of the warrantless entry into the defendant’s home where the police lacked probable cause to believe that she had committed a crime.
 

 The Fourth Amendment to the United States Constitution and Art. I, § 5 of the Louisiana Constitution protects individuals from unreasonable searches and seizures in their homes. Subject to a few well-delineated exceptions, searches and seizures without a warrant are unreasonable under the Fourth Amendment.
 

 |5In
 
 Payton v. New York,
 
 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the United States Supreme Court recognized that a physical entry into a home is the chief evil against which the Fourth Amendment is directed and held that the Fourth Amendment prohibits police from making a nonconsensual entry into a suspect’s home to make a warrantless arrest. Under
 
 Payton,
 
 it is well established that nonconsensual, warrantless searches and seizures in a home are presumptively unreasonable absent a government showing of probable cause and exigent circumstances.
 
 See Minnesota v. Olson,
 
 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990);
 
 New York v. Harris,
 
 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990);
 
 Welsh v. Wisconsin,
 
 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984);
 
 Steagald v. U.S.,
 
 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981).
 

 However, the United States Supreme Court has also recognized that a person may not thwart an otherwise lawful arrest based on probable cause which the police are entitled to make in a public place without a warrant simply by stepping across the threshold of his home.
 
 United States v. Santana,
 
 427 U.S. 38, 43, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300 (1976).
 

 Santana
 
 also involved a warrantless entry into a person’s house to effect an arrest. In
 
 Santana,
 
 police had probable cause to believe that Santana had recently participated in a drug transaction with an undercover police officer. When the police drove up to Santana’s residence she was standing in the open doorway to her home. As the officers exited their vehicle they shouted, “police” and displayed their identification. Santana fled into her home, where police entered and completed her arrest. Santana sought to suppress the drugs found on her person on the grounds that the entry into her home was an improper warrantless search in violation of the Fourth Amendment.
 

 | (¡The Court framed the issue as whether Santana “could thwart an otherwise proper arrest” by retreating into her house. The Court began by stating that a warrantless arrest of an individual in a public place did not violate the Fourth Amendment if there was probable cause. It then reasoned that the officers did have probable cause and were trying to arrest Santana in a public place (her porch). Therefore, absent Santana’s flight, the arrest would not have violated her constitutional rights. As a result, the Court concluded that a suspect could not defeat an arrest “which has been set in motion in a public place” by escaping to a private place.
 
 Id.
 
 at 43, 96 S.Ct. at 2410.
 

 The Court reasoned that the hot pursuit into defendant’s house was justifiable be
 
 *610
 
 cause the police lawfully initiated the arrest in a public place based on probable cause. The court found the case involved a true “hot pursuit” and was clearly governed by
 
 Warden, Md. Penitentiary v. Hayden,
 
 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) where the Court “recognized the right of police, who had probable cause to believe that an armed robber had entered a house a few minutes before, to make a warrantless entry to arrest the robber and to search for weapons.”
 
 Santana,
 
 427 U.S. at 43, 96 S.Ct. at 2410. Furthermore, the court reasoned that “[o]nce Santana saw the police, there was likewise a realistic expectation that any delay would result in destruction of evidence”
 
 Id.
 

 Clearly, Officer Sullivan’s hot pursuit of the defendant was not supported by probable cause for an arrest at the time he entered the home. Nevertheless, the circumstances indicate that the officer had reasonable suspicion, based on the defendant’s actions, that she may have been intoxicated and potentially posed a danger to herself or others.
 

 |7In
 
 State v. Sneed,
 
 95-2326, p. 3 (La.App. 4 Cir. 9/11/96), 680 So.2d 1237, 1238; this court described the standard to support an investigatory stop:
 

 An individual may be stopped and questioned by police if the officer has a reasonable suspicion that the person “is committing, has committed, or is about to commit an offense.” La.Code Crim. Proc. Ann. art. 215.1. While “reasonable suspicion” is something less than the probable cause needed for an arrest, it must be based upon particular articu-lable facts and circumstances known to the officer at the time the individual is approached.
 
 State v. Smith,
 
 94-1502, p. 4 (La.App. 4th Cir.1/19/95), 649 So.2d 1078, 1082. The officer’s past experience, training and common sense may be considered in determining
 
 if
 
 the inferences drawn from the facts presented were reasonable.
 
 State v. Jackson,
 
 26,-138 (La.App.2nd Cir. 8/17/94), 641 So.2d 1081, 1084.
 

 By contrast; “Probable cause to arrest exists when the facts and circumstances known to the officer, and of which he has reasonably trustworthy information, are sufficient to justify a man of ordinary caution in believing the person to be arrested has committed an offense.”
 
 State v. Parker,
 
 2006-0053, p. 2 (La.6/16/06), 931 So.2d 353, 355.
 
 See also State v. Wilson,
 
 467 So.2d 503 (La.1985);
 
 State v. Dowell,
 
 2003-1143 (La.App. 4 Cir. 9/24/03), 857 So.2d 1098.
 

 Section 54-405 of the New Orleans Municipal Code provides: “It is unlawful for any person to appear in a public place manifestly under the influence of alcohol, narcotics or other drugs, not therapeutically administered, to the degree that he may endanger himself or other persons or property.”
 
 [2]
 
 See
 
 State v. Cambrice,
 
 2004-0827, 2004-0828 (La.App. 4 Cir. 9/8/04), 884 So.2d 628;
 
 State v. Smiley,
 
 99-0065 (La.App. 4 Cir.3/3/99), 729 So.2d 743.
 

 |sIn
 
 State v. Ricard,
 
 94-0975 (La.App. 4 Cir. 7/14/94), 640 So.2d 880, the defendant was observed in a high crime area arguing with four females. The officers stopped and exited their vehicle; the defendant saw them and began stumbling away as if drunk or intoxicated. The defendant ignored the officers’ order to stop. The defendant’s hand was clenched, and he attempted to put it in his coat pocket. The officers, believing that the defendant was reaching for a gun, grabbed his hand and opened it, finding a cocaine pipe. This
 
 *611
 
 court found that there was reasonable suspicion for an investigatory stop.
 

 In
 
 State v. Parker,
 
 2006-0053 (La.6/16/206), 931 So.2d 353, the Court found police officers had probable cause to arrest the defendant for public intoxication where defendant, who was attempting to open locked door to a closed business, had bloodshot eyes, was incoherent, and was unsteady on her feet, and she stated that she had smoked crack cocaine, in response to officers’ question of whether she was on medication.
 

 In the present case, the circumstances as a whole did not provide the officers with probable cause to justify an immediate arrest without further investigation; however, the officers were justified in attempting to stop the defendant in order to determine if she was intoxicated.
 

 Accordingly, because Officer Sullivan’s entry was not supported by probable cause, the question raised by this appeal is whether the
 
 Santana
 
 rationale can be extended to a pursuit, based on reasonable suspicion, begun in a public place which continues across the threshold of a home. This issue has been addressed in other jurisdictions but has yet to be directly addressed in this State.
 
 See State v. Walker,
 
 2006-1045 (La.4/11/07), 953 So.2d 786.
 

 Inin
 
 U.S. v. Gori,
 
 230 F.3d 44 (2d Cir.2000), the court was faced with a complex factual scenario in which officers entered an apartment without probable cause to complete an investigation which required the detention of the suspects. The defendants argued that the officer’s reasonable suspicion was insufficient under the
 
 Santana
 
 exception to
 
 Payton;
 
 however, the court found no basis to limit
 
 Santana,
 
 reasoning:
 

 [T]he
 
 Santana
 
 analysis, which supports the warrantless
 
 arrest
 
 of a suspect who has no legitimate expectation of privacy,
 
 a fortiori
 
 allows the lesser intrusion of a brief investigatory detention.
 
 See Illinois v. Wardlow,
 
 528 U.S. 119, 120 S.Ct. 673, 677, 145 L.Ed.2d 570 (2000) (investigatory detention “is a far more minimal intrusion” than arrest);
 
 United States v. Place,
 
 462 U.S. 696, 705, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (same).
 

 Gori,
 
 230 F.3d at 53.
 

 The court then conducted a separate Fourth Amendment reasonableness analysis of the officers’ actions, stating:
 

 Once it is decided that no warrant was needed, “the central inquiry” under the Fourth Amendment becomes “reasonableness in all the circumstances.”
 
 Terry,
 
 392 U.S. at 19, 88 S.Ct. 1868, 20 L.Ed.2d 889. “ ‘[T]he touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen’s personal security,’ ” and “reasonableness ‘depends on a balance between the public interest and the individual’s right to personal security free from arbitrary interference by law officers.’ ”
 
 Maryland v. Wilson,
 
 519 U.S. 408, 411, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (quoting
 
 Pennsylvania v. Mimms,
 
 434 U.S. 106, 108-09, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam) (additional internal quotation marks omitted)).
 

 We conclude that officers Rodriguez and Contreras acted reasonably at every stage of the “swiftly developing situation” presented on this record.
 
 United States v. Sharpe,
 
 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (in assessing reasonableness under
 
 Terry,
 
 courts “should take care to consider whether the |1f)police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing”). Based on
 
 *612
 
 the exigencies of the moment-one following the other-what the police did, said and asked at each stage of the encounter was reasonable from a Fourth Amendment perspective. The police had no obvious option, given the circumstances, other than to proceed as they did.
 

 Gori,
 
 230 F.3d at 54-55.
 

 Similarly, in
 
 Edwards v. United States,
 
 364 A.2d 1209, (D.C.App.1976),
 
 aff'd on other grounds,
 
 379 A.2d 976 (D.C.App. 1977) (en banc), the court extended
 
 Santana
 
 to a situation involving less than probable cause. In
 
 Edwards,
 
 police officers observed the defendant and his companion walking down a street, late at night, carrying commercial audio components and a bundled sheet containing various other items. From an unmarked car, the officers asked the suspects to stop so they could speak with them. The suspects took off running into an adjacent apartment building. The officers pursued them into an apartment where they were detained. The court found that the evidence seized was admissible.
 

 Recognizing that
 
 Terry
 
 allows an officer to restrain an individual in order to alleve or dispel reasonable suspicions that a crime is occurring, the court concluded that
 
 Santana
 
 authorized the entry into the apartment, concluding that the “gravamen of the Court’s holding in
 
 Santana
 
 to be that when a citizen has knowingly placed himself in a public place and valid police action is commenced in that public place, the citizen cannot thwart that police action by then fleeing into a private place.” Edwards, 364 A.2d at 1214.
 

 _JjjBy contrast, in
 
 State v. Beavers,
 
 859 P.2d 9, (Utah App.,1993), the court concluded that an extension of the
 
 Terry
 
 doctrine to warrantless entries of private premises is contrary to Fourth Amendment principles. The court reasoned:
 

 [T]he rationale for permitting war-rantless entries into private residences is totally inapplicable in the
 
 Terry
 
 context. Warrantless entries are justified with
 
 probable cause
 
 and exigent circumstances because in such circumstances, the delay to obtain a search warrant would risk “physical harm to the officers or other persons, the destruction of relevant evidence, [or] the escape of the suspect.”
 
 United States v. Lindsey,
 
 877 F.2d 777, 780 (9th Cir.1989) (quoting
 
 United States v. McConney,
 
 728 F.2d 1195, 1199 (9th Cir.1984)). In -contrast, a
 
 Terry
 
 stop is justified on the basis that police should be able to briefly stop citizens to investigate circumstances which lead an officer “reasonably to conclude in light of his experience that criminal activity
 
 may
 
 be afoot.”
 
 Terry v. Ohio,
 
 392 U.S. 1, 20-23, 30, 88 S.Ct. 1868, 1879-81, 1884, 20 L.Ed.2d 889 (1968) (emphasis added). Thus, the only risk that exists if an investigatory stop is not effected is the risk that investigation of
 
 potential
 
 criminal activity might be delayed or, at worst, thwarted altogether. That risk is diminished in the residential setting because the person police wish to question is located in a dwelling that can generally be staked out until the person emerges, if a polite knock at the door fails to produce a suspect willing to voluntarily answer police inquiries.
 

 Beavers,
 
 859 P.2d at 17.
 

 Like
 
 Gori, Beavers
 
 concerned a complex factual scenario which culminated in the police entering an apartment and restraining the occupants while they conducted a brief investigation. In the court’s thorough analysis, it considered several cases where the issue had been raised and found cause to distinguish its holding in several instances. Specifically, the court took the position that
 
 Edwards
 
 was decided wrongly stating:
 

 
 *613
 
 More importantly, we believe the
 
 Edwards I
 
 panel misinterpreted the
 
 Santana
 
 decision. We view the Santana Court’s articulation of the hot pursuit doctrine as |12nothing more than a specific application of the general rule that a warrantless entry of a private residence must be justified by probable cause
 
 and
 
 exigent circumstances. Nowhere in
 
 Santana
 
 did the Court hint it was expanding the application of this rule to circumstances amounting to less than probable cause. In fact, as noted above, the Santana Court, by its own language, based its decision on the facts that the police possessed probable cause to arrest defendant and defendant’s action created an exigency whereby evidence of a serious crime would have been destroyed had police delayed their pursuit.
 
 Santana,
 
 427 U.S. at 42-43, 96 S.Ct. at 2409-10.
 

 By expanding the
 
 Santana
 
 exception to
 
 Terry
 
 stops, the
 
 Edwards I
 
 panel disregarded the Supreme Court’s directive that exceptions to the warrant requirement should be few in number, carefully delineated, and jealously drawn.
 
 See Welsh v. Wisconsin,
 
 466 U.S. 740, 749, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984);
 
 Coolidge v. New Hampshire,
 
 403 U.S. 443, 465, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971);
 
 State v. Ashe,
 
 745 P.2d 1255, 1258 (Utah 1987). Moreover, in
 
 Welsh
 
 the Supreme Court narrowed rather than expanded
 
 Santana’s
 
 carefully delineated exception to the warrant requirement by holding that, despite the State’s claim that potential loss of evidence constituted exigent circumstances, police entry into a home to arrest a suspected drunk driver was unconstitutional, notwithstanding the existence of outright probable cause, because the suspected offense was “minor.”
 
 Welsh,
 
 466 U.S. at 753, 104 S.Ct. at 2099. The Court reasoned that the government’s interest in arresting defendant for a minor offense was insufficient to overcome the presumption of unreasonableness attached to the war-rantless search of a home.
 
 Welsh,
 
 466 U.S. at 750-54, 104 S.Ct. at 2098-2100.
 

 Beavers,
 
 859 P.2d 9 at 15-16 (footnotes omitted).
 
 [3]
 

 h,.¡Because the U.S. Supreme Court’s decision in
 
 Welsh
 
 bears on the resolution of this case, further discussion is warranted. In
 
 Welsh,
 
 a driver lost control of his car and came to a stop in a field. A witness saw the driver walk away and informed the police that the driver was either very inebriated or very sick. The police went to the driver’s house, a short distance away, entered the home without a warrant, and arrested the driver who was in his bed by that time.
 

 Relying primarily on the deeply rooted principle that the “physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed,”
 
 Welsh,
 
 466 U.S. at 749, 104 S.Ct. at 2097 (quoting
 
 United States v. United States Distnct Court for Eastern District
 
 
 *614
 

 of Michigan, 407 U.S. 297, 313,
 
 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972)), the U.S. Supreme Court held that neither exigent circumstances nor hot pursuit justified the entry into Welsh’s home.
 

 The Supreme Court first reasoned that the State’s attempt to justify the entry into Welsh’s home on the basis of the “hot pursuit” doctrine was “unconvincing because there was no immediate or continuous pursuit” from the scene of the crime.
 
 Id,
 
 466 U.S. at 753, 104 S.Ct. at 2099. Likewise, the warrantless entry could not be justified on the basis of a threat to public safety, because Welsh “had already arrived home, and had abandoned his car at the scene of the accident.”
 
 Id.
 

 Finally, the Court found the State’s only remaining justification, the need to ascertain the petitioner’s blood-alcohol level, insufficient. Initially, the Court noted that Wisconsin had chosen to classify the first offense for driving while intoxicated as a noncriminal, civil forfeiture offense. The Court noted that “lower courts have looked to the nature of the underlying offense as an important factor to be considered in the exigent circumstances calculus,”
 
 Id.,
 
 466 U.S. at 751, 104 S.Ct. at 2098, and reasoned that when there is probable cause to believe that only a |14minor offense has been committed, “application of the exigent circumstances exception in the context of a home entry should rarely be sanctioned.”
 
 Id.,
 
 466 U.S. at 753, 104 S.Ct. at 2099.
 

 Accordingly, the Court found the behavior of the police unreasonable in balance to the state’s interest and therefore in violation of the special protection afforded the individual in his home by the Fourth Amendment.
 

 In
 
 State v. Bolte,
 
 115 N.J. 579, 560 A.2d 644, 645 (N.J.,1989), the New Jersey Supreme Court was called on to determine whether a police officer, in hot pursuit of a person suspected of numerous motor vehicle and disorderly persons offenses, may make a warrantless entry into the suspect’s home to effect an arrest. Following
 
 Welsh,
 
 the court ruled that the officer’s intrusion into the home violated the Fourth Amendment’s protection against unreasonable searches and seizures and found that Santana’s application was questionable because the defendant’s crimes were not felonies. The Court also found that while both cases shared the characteristic of “hot pursuit,” the additional circumstance of the potential destruction of evidence was not present.
 

 In the context of the facts of the case, the New Jersey Supreme Court was perhaps wise to treat hot pursuit and exigent circumstances separately, however most courts take
 
 Santana’s
 
 holding at face value, treating hot pursuit as an exception unto itself, rather than as just another factor.
 
 E.g., People v. Tillman,
 
 355 Ill.App.3d 194, 198, 291 Ill.Dec. 107, 823 N.E.2d 117, 121-22 (2005),
 
 appeal denied,
 
 215 Ill.2d 616, 295 Ill.Dec. 526, 833 N.E.2d 8 (2005);
 
 People v. Wimbley,
 
 314 Ill.App.3d 18, 25, 246 Ill.Dec. 762, 731 N.E.2d 290, 295 (2000) (“Courts have also found exigent circumstances where police are in ‘hot pursuit’ of a suspect who flees from a public place into his residence”);
 
 State v. Blake,
 
 468 N.E.2d 548, 553 (Ind.App.1984) (“immediate and continuous pursuit from the scene of the crime formed the exigent circumstance”);
 
 People v. Lloyd, 216
 
 Cal.App.3d 1425, 1429, 265 Cal.Rptr. 422, 425 (1989) (“the officer’s ‘hot pursuit’ into the house to prevent the suspect from frustrating the arrest which had been set in motion in a public place constitutes a proper exception to the warrant requirement”).
 

 In
 
 State v. Maland,
 
 140 Idaho 817, 103 P.3d 430 (2004), the State argued on the basis of
 
 Santana
 
 and a previous Idaho
 
 *615
 
 Supreme Court decision that “the protections afforded by the Fourth Amendment do not prevent an officer from making a warrantless, nonconsensual entry into a suspect’s home to effectuate a
 
 Terry
 
 stop” and that there is “no reason to distinguish between entry into a residence to complete a
 
 Terry
 
 stop and entry to complete a probable cause-based arrest.”
 
 Id.,
 
 103 P.3d at 436. The Supreme Court of Idaho rejected the argument and overruled its previous decision on the issue stating that law enforcement officers may not enter a home to effectuate a
 
 Terry
 
 stop when there is no probable cause for an arrest, nor exigent circumstances.
 

 Turning to the circumstances at hand, we find that Officer Sullivan’s pursuit of the defendant into her home was unreasonable. While we are not prepared to say that
 
 Santana’s
 
 rationale cannot be extended beyond the context of probable cause to arrest, given the special protections of the home, the State must present a strong interest in conducting a warrant-less entry into the home. Here, the defendant’s actions would certainly have appeared perplexing to an observer, and were sufficient to warrant further investigation by Officer Sullivan and his partner; however, once the defendant retreated into the home, any concern for public safety was alleviated, and any concern for Lala’s personal safety could have been addressed by other measures short of forcible entry into the home. Given the | ^limited severity of Lala’s suspected offense, the State’s interest would have been well served by first knocking on the defendant’s door. Accordingly, we reverse the denial of defendant’s motion to suppress the evidence.
 

 ASSIGNMENT OF ERROR NO. 2
 

 Defendant’s Assignment of Error No.
 
 2
 
 contends the trial court erred in denying her motion in limine to prevent the introduction into evidence of the spoon with heroin residue recovered from her purse. However, this assignment is mooted by our disposition of her first assignment of error.
 

 For the reasons stated above we reverse the defendant’s conviction and remand the case for further proceedings consistent with the views expressed herein.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . The defendant's last name is spelled "Lala” throughout most of the record; however, appellate counsel spells defendant's last name as "LaLa.”
 

 [2]
 

 . The crime is punishable by a fine not exceeding $500 or by imprisonment for not more than five months or both. See § 54-25 of the New Orleans Municipal Code.
 

 [3]
 

 . The
 
 Beavers
 
 court also distinguished
 
 Edwards
 
 by noting that while the District of Columbia Court of Appeals affirmed the decision en banc, it did so by concluding that that the police had probable cause to arrest the defendants before they entered the apartment.
 

 In support of its decision, the
 
 Beavers
 
 court also noted that in
 
 United States v. Tobin,
 
 923 F.2d 1506, 1511 (11th Cir.1991) (en banc), the Eleventh Circuit stated, albeit in dicta, that “reasonable suspicion cannot justify the warrantless search of a home.” The
 
 Beavers
 
 court also drew support from
 
 State v. Davis,
 
 295 Or. 227, 242, 666 P.2d 802, 812 (1983) (en banc), where the Oregon Supreme Court refused to "extend the scope of a
 
 Terry
 
 protective search into the private recesses of one's dwelling when an officer stands at the threshold with merely reasonable suspicion to support an investigation.”