| STATE OF LOUISIANA | * | NO. 2023-K-0195 |
| VERSUS | * | COURT OF APPEAL |
| TREMAINE MOSES | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |
| | * | |
| | * | |

* * * * * * *

*TFL*

**LOVE, C.J., DISSENTS AND ASSIGNS REASONS**

I respectfully dissent.

In granting Relator's motion to suppress, the majority primarily relies on *State v. Lala*, 08-0484 (La. App. 4 Cir. 12/3/08), 1 So.3d 606, to find that Officer Stevenson's and the other officers' entry into Relator's private residence without a warrant, resulting in the seizure of the evidence that led to his arrest, amounted to an illegal search and seizure. As noted by the majority, *Lala*, , recognizes that the "chief evil" which the Fourth Amendment is intended to protect against is government intrusion into the home; and as such, the Fourth Amendment prohibits police from making a nonconsensual entry into the home to effectuate a warrantless arrest. *See Lala*, 08-0481, p. 5, 1 So.3d at 609, citing *Payton v. New York*, 445 U.S. 773, 100 S.Ct. 1371, 63 L.Ed. 639 (1980). Accordingly, the *Lala* Court found that the police failed to demonstrate a sufficient State interest to pursue the defendant into her home for suspected public intoxication and thereafter, recover cocaine, to justify the warrantless entry. *Id.*, p.15, 1 So.3d at 615. However, I find that the facts of *Lala* and its holding are not squarely on all fours with the evidence and facts developed at the hearing on Relator's motion to suppress.

In contrast to *Lala,* it appears that the discovery of evidence that led to Relator's arrest occurred as Relator attempted to enter the residence. Officer Stevenson indicates that his initial encounter with Relator began in the carport area outside the residence and that other officers observed the concealed weapon as Relator raised his arm to pull away from Officer Stevenson as Relator attempted to enter the residence.

In describing the circumstances leading up to his contact with Relator, Officer Stevenson testified that he responded to a call of a homicide with the shooter, described as a "tall black male wearing a back [sic] hoodie with jeans . . ." Thinking the murder could be related to a call concerning an aggravated assault "a few houses down," Officer Stevenson relocated to the address associated with the assault call, where he encountered Relator who "matched the description given" to him by his supervisor. Officer Stevenson delineated his encounter with Relator as follows:

> When I arrived at the address I started to ask—[t]here were some people in the driveway—what they had seen or of anything had occurred there. A few individuals came up to me. They were talking about the deceased person in the street. While I was talking to them. I saw an individual that we later identified as Tremaine Moses. He was standing in the back of the carport of 2052 [SIC], standing away from me. I saw he was wearing a black hoodie and dark-colored jeans. And he matched the description given to me by my supervisor and the initial responding officers on the scene.
>
> ***
>
> I approached him and I asked --- I was --- I asked the individual for his name. He refused to give it. He said: "I don't have a name." And he started to walk away from me. I called out again, said: "Sir, what is your name?" And he continued to walk and **tried to enter the house at 7052**. (emphasis added).
>
> And due to him matching the description given to me, I was going to detain him to make sure he may or may not be involved in the homicide and to see if I can get some identification.
>
> When I went to reach for him, he started to pull away into the house. During that [time,]I was able to get control of his arms. And during that, his arms were lifted which raised up his waistband -- his shirt

above his waistband. And that was when the other officers with me saw that he had a concealed firearm in the front of his waistband.

The Supreme Court in *State v. Palmer*, 09-0044 (La 7/1/09), 14 So.3d 304, 208, n. 2, explained the difference between public and private property and an individual's private residence for purposes of applying the Fourth Amendment as follows:

> [F]or purposes of the Fourth Amendment, the distinction is not between public and private property but between public and private places, and when an individual steps across the threshold of a home he enters a public place and subject to seizure by the police acting upon probable cause for an arrest or reasonable suspicion for an investigatory stop. Thus, in *United States v. Santana,* 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976), the Supreme Court held that the defendant could not forestall her arrest, which began when she was standing in the doorway of her home, simply by stepping back across the threshold into the vestibule of the home. The Court observed:
>
>> While it may be true that under the common law of property the threshold of one's dwelling is 'private,' as is the yard surrounding the house, it is nonetheless clear that under the cases interpreting the Fourth Amendment Santana was in a 'public' place. She was not in an area where she had any expectation of privacy. "What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). She was not merely visible to the public but was a[lso] exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house. *Hester v. United States,* 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924). Thus, when the police, who concededly had probable cause to do so, sought to arrest her, they merely intended to perform a function which we have approved in [U.S. v.] *Watson*[, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) ].
>
> *Santana,* 427 U.S. at 42, 96 S.Ct. at 2409.

Hence, in the case *sub judice*, because Relator was not yet inside his residence and was still in a "public place" at the time the officers viewed the concealed weapon, Relator was therefore subject to seizure by the police acting upon a reasonable suspicion for an investigatory stop. *Id.*

In further distinguishing this matter from *Lala,* here, the police's underlying investigation involved a homicide, as opposed to the relatively minor offense of public intoxication in *Lala.* Thus, even if the police's pursuit of Relator breached the threshold of the entry to the home, the State's interest in public safety, i.e., protecting the community from a potential murder, presented a strong interest for the State to conduct a warrantless entry. Had Relator been the suspected murderer, his attempted retreat into his residence could have resulted in the destruction of evidence or delay in the officer's investigation.

The police had reasonable suspicion to conduct a *Terry* investigatory stop. The revelation that Relator possessed a hidden firearm authorized the lengthier detention to determine whether Relator could legally possess the firearm, and thereafter, his arrest upon learning of Relator's status as a convicted felon.

Based on the foregoing reasons, I respectfully dissent and would deny Relator's writ application.