STATE OF LOUISIANA      *      NO. 2023-K-0195

VERSUS      *

     COURT OF APPEAL

TREMAINE MOSES      *

     FOURTH CIRCUIT

     *

     STATE OF LOUISIANA

     * * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 554-138, SECTION "I"
Honorable Raymond C. Bigelow, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *
(Court composed of Chief Judge Terri F. Love, Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins)
**LOVE, C.J., DISSENTS AND ASSIGNS REASONS**


Mark Balfe
ORLEANS PUBLIC DEFENDERS
2601 Tulane Avenue
Seventh Floor
New Orleans, LA 70119

      COUNSEL FOR RELATOR


Jason R. Williams
Brad Scott
Mithun B. Kamath
ORLEANS PARISH DISTRICT ATTORNEY'S OFFICE
619 S. White Street
New Orleans, LA 70119

      COUNSEL FOR RESPONDENT


        **WRIT GRANTED;**
**JUDGMENT REVERSED**
**APRIL 10, 2023**

*RML*
*TFL*
*SCJ*

In this application for supervisory writ, the Relator, Tremaine Moses, seeks review of the district court's February 16, 2023 ruling denying his motion to suppress evidence. For the following reasons, we grant Mr. Moses' writ application, reverse the district court's ruling denying his motion to suppress evidence, and grant Mr. Moses' motion to suppress.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

On March 4, 2022, the New Orleans Police Department received reports of aggravated assault and homicide at two nearby locations. The aggravated assault was reported at 7252 Bunker Hill Road. Several minutes later, the homicide was reported at 8811 Bunker Hill Road. The two locations are within a few hundred feet of each other, and 8811 Bunker Hill Road is visible from 7252 Bunker Hill Road.

Officer Zachary Stevenson responded to the homicide call. When he arrived at the scene, his supervisor informed him that the homicide suspect had been

---

[1] Due to the pretrial posture of this case, the factual recitation is taken from Officer Zachary Stevenson's testimony at the hearing on Mr. Moses' motion to suppress.

1

described as wearing a dark hoodie and dark jeans, but he was given no further information, such as the direction of the suspect's flight after the homicide. While surveying the homicide scene, Officer Stevenson recalled the aggravated assault reported nearby and noticed that the clothing worn by the homicide victim matched the description of the aggravated assault suspect. Given this coincidence coupled with the proximity of the two locations, Officer Stevenson decided to investigate whether anyone at 7252 Bunker Hill Road had information about the homicide. Upon his arrival, several people standing in the driveway approached Officer Stevenson to inform him that they were relatives of the homicide victim.

While in the driveway, Officer Stevenson noticed Mr. Moses standing in the rear of the carport attached to the residence. Mr. Moses' clothing—a black hoodie and dark jeans—matched the description of the homicide suspect given by Officer Stevenson's supervisor.[2] Officer Stevenson approached Mr. Moses underneath the carport and asked for his name. Mr. Moses refused to provide his name and walked into the doorway of the residence.[3] As Mr. Moses entered the residence, Officer Stevenson followed him, grabbed him by his arms to restrain him, and pulled him out of the house.[4] During this struggle, Mr. Moses' arms were raised,

_____

[2] During the motion to suppress hearing, Officer Stevenson was questioned about a Premier One report—a report that includes all information relayed to various 911 dispatchers about a reported incident. The description offered by Officer Steven's supervisor did not appear in the Premier One report; rather, the report states that one witness described the suspect as wearing a blue hoodie and jeans and another reported that the victim was shot by his ex-girlfriend.

[3] Mr. Moses first responded to Officer Stevenson that he did not have a name. When Officer Stevenson again asked his name, Mr. Moses did not answer and walked into the doorway of the residence.

[4] The record is ambiguous as to whether Officer Stevenson entered the residence. Defense counsel asked, "at the time that you are following [Mr. Moses] into the house and—and grabbing

revealing a handgun tucked into his waistband. After other police officers removed the handgun from Mr. Moses' waistband, Officer Stevenson handcuffed him and searched his person incident to his arrest. During the search he discovered amphetamine. After running a background search, Officer Stevenson discovered that Mr. Moses had a previous felony conviction that prevented him from possessing a firearm.

Mr. Moses was charged with possession of a firearm by a felon and possession of a firearm while in possession of methamphetamine, in violation of La. R.S. 14:95.1 and 14:95(E), respectively. Mr. Moses filed a motion to suppress evidence, arguing that Officer Stevenson violated his Fourth Amendment rights under the United States Constitution and requesting that all evidence seized pursuant to the arrest be excluded from trial. The district court denied the motion. Mr. Moses' writ application followed.

**DISCUSSION**

Mr. Moses argues that Officer Stevens' warrantless entry into the residence and subsequent arrest were illegal and that all evidence seized during the arrest and the search incident to arrest—including the handgun and narcotics—must be suppressed. Although the record is unclear whether Officer Stevens entered the

---

him to detain him, you have witnessed him commit no crimes, correct?" Officer Stevenson responded that Mr. Moses had not committed any crimes at that time and offered no dispute that he entered the residence. However, Officer Stevenson later testified that "[he] had to grab [Mr. Moses'] arms to keep him from going inside the residence[,]" suggesting that Officer Stevenson never entered the residence. Regardless, it is undisputed that Mr. Moses had entered the doorway of the residence at the time he was arrested; Officer Stevenson admitted on cross-examination that "[he] grabbed [Mr. Moses] from the doorway."

3

residence, we agree that his detention and arrest of Mr. Moses from a private residence was unreasonable.[5]

The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. "'If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial.'" *State in Interest of T.H.*, 12-0223, p. 4 (La. App. 4 Cir. 12/12/12), 106 So.3d 703, 706 (quoting *State v. Benjamin,* 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989). Warrantless searches and seizures are presumed unreasonable unless justified by one of the few well-delineated exceptions to the warrant requirement. *State v. Lala*, 08-0484, p. 5 (La. App. 4 Cir. 12/3/08), 1 So.3d 606, 609. When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the State bears the burden of proving that the search and seizure was justified pursuant to one of the exceptions to the warrant requirement. *State v. Warren*, 05-2248, p. 13 (La. 2/22/07), 949 So.2d 1215, 1226.

In *Lala*, this court addressed a very similar set of facts and synthesized the law pertinent to warrantless entry, as follows:

> In *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the United States Supreme Court recognized that a physical entry into a home is the chief evil against which the Fourth Amendment is directed and held that the Fourth Amendment prohibits police from making a nonconsensual entry into a suspect's home to make a warrantless arrest. Under *Payton,* it is well established that

---

[5] Mr. Moses also argues that Officer Stevenson lacked the requisite reasonable suspicion to detain and question him. Because we find that Officer Stevenson's arrest of Mr. Moses from within the private residence was illegal, we pretermit any discussion of whether Officer Stevenson possessed the requisite reasonable suspicion to detain and question him.

nonconsensual, warrantless searches and seizures in a home are presumptively unreasonable absent a government showing of probable cause and exigent circumstances. *See Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990); *New York v. Harris,* 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990); *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *Steagald v. U.S.,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981).

However, the United States Supreme Court has also recognized that a person may not thwart an otherwise lawful arrest based on probable cause which the police are entitled to make in a public place without a warrant simply by stepping across the threshold of his home. *United States v. Santana,* 427 U.S. 38, 43, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300 (1976).

*Id*., 08-0481, p. 5, 1 So.3d at 609.

In *Lala*, the court found that an officer who entered a residence while in hot pursuit of a defendant possessed the requisite level of reasonable suspicion to detain and question the defendant in public under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2 889 (1968), but lacked probable cause to justify a warrantless entry into the residence under *Santana*, 427 U.S. 38, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300. *Lala,* 08-0481, p. 15, 1 So.3d at 615. The court in *Lala* turned to the same question presented here: whether reasonable suspicion, permitting an officer to stop and detain a suspect in public, likewise permitted an officer to detain a suspect in a private residence while in pursuit of a suspect. *Id*.

The *Lala* court answered this question in the negative, reasoning that "given the special protections of the home, the State must present a strong interest in conducting a warrantless entry into the home." *Id*.[6] The *Lala* court found that once the defendant retreated into the home, the State's interest in public safety was

---

[6] The court in *Lala* left open the possibility that different circumstances might permit an officer's warrantless entry into a private residence without probable cause. *Id*, 08-048, p. 15, 1 So.3d at 615.

alleviated. *Id*. Moreover, in discussing the absence of other potential justifications for an officer's warrantless entry into the home, the *Lala* court quoted the Utah Court of Appeals' sound reasoning in *State v. Beavers*, 859 P.2d 9 (Utah App., 1993), as follows:

> Warrantless entries are justified with *probable cause* and exigent circumstances because in such circumstances, the delay to obtain a search warrant would risk physical harm to the officers or other persons, the destruction of relevant evidence, [or] the escape of the suspect. In contrast, a *Terry* stop is justified on the basis that police should be able to briefly stop citizens to investigate circumstances which lead an officer reasonably to conclude in light of his experience that criminal activity *may* be afoot. Thus, the only risk that exists if an investigatory stop is not effected is the risk that investigation of *potential* criminal activity might be delayed or, at worst, thwarted altogether. That risk is diminished in the residential setting because the person police wish to question is located in a dwelling that can generally be staked out until the person emerges, if a polite knock at the door fails to produce a suspect willing to voluntarily answer police inquiries.

*Lala*, 08-0484, p. 11, 1 So.3d at 612 (quoting *State v. Beavers*, 859 P.2d 9, 17 (Utah App., 1993) (internal quotations and citations omitted)).

We find the reasoning underlying *Lala* and *Beavers* equally applicable here. Whether Officer Stevenson entered the residence to detain Mr. Moses or merely pulled him from the residence presents a distinction without a difference. Once Mr. Moses retreated to the private residence, the State must present a strong interest in forcibly removing Mr. Moses from the residence. Here, the State did not meet this burden.

Officer Stevenson conceded that he did not have probable cause to believe Mr. Moses committed a crime when he entered the residence. Nor did Officer Stevenson's testimony demonstrate a valid exception to the warrant requirement

6

justifying his warrantless intrusion into the residence. There was no threat to public safety or officer safety in permitting Mr. Moses to remain in the residence. The only risk of not continuing the investigatory stop of Mr. Moses was the risk that investigation of potential criminal activity might be delayed or thwarted. But, inconvenience is not a recognized exception to the warrant requirement. Further, as the court in *Beavers* reasoned, any risk that the investigation might be thwarted was diminished because Mr. Moses was located in a residence that could generally be staked out until he emerged or until sufficient evidence was gathered to support issuance of a warrant.

We conclude that the State failed to rebut the presumption that Officer Stevenson's warrantless intrusion into the residence and arrest of Mr. Moses was unreasonable. Accordingly, we find the district court erred in denying the motion to suppress evidence.

## DECREE

For the foregoing reasons, we grant Mr. Moses' writ, reverse the district court's February 16, 2023 ruling denying his motion to suppress evidence, and grant Mr. Moses' motion to suppress evidence.

**WRIT GRANTED;**
**JUDGMENT REVERSED**