[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15659
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cv-03210-CEH-AEP

MICHAEL BRATT,
MARJORIE YOUMANS,

                                        Plaintiffs - Appellees,

versus

LOUIS GENOVESE, et al.,

                                        Defendants,

STEVEN GEORGE,

                                        Defendant - Appellant.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 2, 2016)

Before JORDAN, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Appellant Steven George, a deputy with the Hernando County Sheriff's Office, appeals the district court's denial of his motion for summary judgment. George premised his motion on qualified immunity, in response to Plaintiffs Michael Bratt and Marjorie Youmans's claim that he violated their Fourth Amendment rights when he entered their home without a warrant. After a thorough review, we agree with the district court that no officer reasonably could have believed that exigent circumstances justifying entry into Plaintiffs' home existed under the facts of this case. So we affirm the district court's determination that Deputy George was not entitled to qualified immunity.

## I.

Taking the evidence in the light most favorable to Plaintiffs, we set forth the essential facts and procedural history of the underlying case. Just after midnight on December 26, 2009, while on duty, George received a call regarding complaints of a shooting in the area of Snow Hill Road in Brooksville, Florida. George responded to the call and remained in the area for approximately half an hour but did not make contact with anyone at the time. Soon after George left the area, Plaintiffs' neighbors Eugenia and Joseph Simpson called the police department, complaining that they heard explosions coming from Plaintiffs' residence at 22315

2

Snow Hill Road. George was again dispatched to the call, but this time he spoke with Eugenia Simpson, who told him that she heard multiple loud explosions coming from Plaintiffs' residence. Simpson reported that she heard the explosions following a verbal argument between her husband and Bratt.

After speaking with the Simpsons, George decided to contact Plaintiffs to discuss the complaint their neighbors made. George walked directly to the front door of Plaintiffs' residence. Once there, he knocked and then heard Bratt ask, "Who is there?" In response, George identified himself as a deputy with the Hernando County Sheriff's Office and said that he needed to speak with Bratt. Bratt requested to see George's badge. So George illuminated his police badge with his flashlight and again identified himself as a deputy. At the time, George wore a standard green uniform issued by the Hernando County Sheriff's Office.

Bratt opened the front door approximately one foot, turned on the lights inside his house, and asked, "What's the problem?" Again, George identified himself as an officer of the Hernando County Sheriff's office. In response, Bratt opened the door a little wider.

By this point, Bratt's wife, Marjorie Youmans, had come to the front door. Bratt and Youmans both began yelling at George to "get off of their property." As Youmans yelled at George, she began to move toward George. But Bratt put his

arm across her chest to prevent her from approaching George.[1]   Immediately, George yelled "domestic violence" and began pushing on the door.   Bratt attempted to shut the door in George's face, but he was unable to do so.   Then George reached in through the crack of the open doorway and deployed his Taser on Bratt's leg.[2]

According to Plaintiffs, the front door then burst open, and George came "flying in."   But as he did so, George slipped on the wood floor, fell, and hit his face against the living-room floor.[3]   George sustained a broken nose, a laceration to the left side of his nose, and two other cuts to his face.   As a result of these injuries, George began to bleed heavily while lying on the floor of Plaintiffs' living room.

Eventually, George got to his knees.   Bratt picked up George's Taser, which was lying on the floor of the living room, and handed it to George, asking him to please not tase him again.   But as Bratt began to hand George the Taser, George tried to tase Bratt again.   So Bratt ripped the Taser out of George's hand and threw the Taser to the ground.

---

[1] George testified that he observed Bratt forcefully grab and shove Youmans two times, while Youmans resisted and tried to pull forward.  Because we must take the facts in the light most favorable to Plaintiffs, we credit their version of events in deciding this appeal.

[2] George denies tasing Bratt.

[3] According to George, Bratt grabbed George, dragged him inside the residence, and slammed George's head into the corner of a wooden coffee table in the living room. Again, however, we construe the facts in the light most favorable to Plaintiffs, so we do not credit George's version of events in resolving this appeal.

A physical struggle ensued, with George attempting to handcuff Bratt and Bratt resisting George's attempts.[4]  After a 20 to 25-minute struggle, George prevailed and handcuffed Bratt in his living room.  A backup officer arrived, entered the residence, and escorted Bratt outside.  Although Bratt was charged criminally for his actions on December 29, 2009, he was acquitted of all charges arising out of the incident.

## II.

Plaintiffs filed an amended complaint in federal court, asserting various claims against George and other officers who responded to the scene.  Of significance to this appeal, Bratt filed a claim under 42 U.S.C. § 1983, alleging that George violated Plaintiffs' Fourth Amendment rights by unlawfully searching Bratt's home.  George moved for summary judgment, asserting that he was entitled to qualified immunity.  The district court granted summary judgment in favor of George on many of the claims but denied the motion with respect to Bratt's Fourth Amendment claim.  In the district court's review, no exigent circumstances justified George's warrantless entry into Bratt's home.  Nor did the district court find the "hot pursuit' exception applicable under the circumstances.  George appeals the district court's denial of qualified immunity.

---

[4] According to George, Bratt reached for George's gun but was unable to unsnap the thumb brake on his holster.  George rolled onto his right side to protect his gun and was able to push Bratt away.  Bratt then grabbed George's taser and used it on George's upper right arm.

### III.

We have jurisdiction to hear appeals from "all final decisions of the district courts of the United States. . ." 28 U.S.C. § 1291. A district court's denial of a qualified-immunity claim is a "final decision" under Section 1291, to the extent that it turns on an issue of law. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S. Ct. 2806, 2817 (1985). A public official may immediately appeal a denial of qualified immunity where, as here, the disputed issue involves whether the defendant's conduct constitutes a violation of clearly established law. *Mitchell,* 472 U.S. at 528, 105 S. Ct. at 2816–17.

### IV.

We review de novo a district court's denial of qualified immunity on a motion for summary judgment. *Wilkerson v. Seymour*, 736 F.3d 974, 977 (11th Cir. 2013). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, we consider the record and draw all reasonable inferences in the light most favorable to the non-moving party. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008 (per curiam) (citation omitted).

## V.

Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The qualified-immunity defense aims to strike a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Under the qualified-immunity doctrine, a public official must first show that he was acting within the scope of his discretionary authority. *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). As the parties do not dispute that George was acting within the scope of his discretionary authority, the burden shifts to Bratt to demonstrate that qualified immunity is not appropriate. *See id*. In order to do this, Bratt must show that, when viewed in the light most favorable to him, the facts demonstrate that George committed a violation of Bratt's constitutional right and that the right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Here, Bratt asserts that George violated his Fourth Amendment right to be free from unreasonable searches. The text of the Fourth Amendment speaks of the

7

right to be secure in one's person and house, and prohibits the government from conducting "unreasonable searches and seizures." U.S. Const. amend. IV.  These protections have particular force in the home: "When it comes to the Fourth Amendment, the home is first among equals.  The right of a man to retreat into his own home, and there be free from unreasonable governmental intrusion, stands at the core of the Amendment. *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013) (citations omitted).  Consequently, "it is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (internal quotations omitted).

Police officers "need a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home."  *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002).  Any other rule would "undermine the right of the people to be secure in their persons, houses, papers and effects, and would obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law."  *Johnson v. United States*, 333 U.S. 10, 17, 68 S. Ct. 367, 371 (1948).

The Fourth Amendment protects citizens against unwarranted intrusions into the home by police and other government officials.  *See, e.g., Johnson v. United States*, 333 U.S. 10, 14 (1948); *McDonald v. United States*, 335 U.S. 451, 455

8

(1948). This protection is not unlimited, as the Supreme Court has long recognized an exception to the warrant requirement under exigent circumstances. *See id.*

Exigent circumstances exist where "the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." *Id.* at 1240. A law-enforcement officer may enter a private residence without a warrant to "break up a violent fight," "prevent the destruction of evidence," "put out a fire in a burning building," "pursue a fleeing suspect," "rescue a kidnapped infant," or "attend to a stabbing victim," for example. *Id.* at 1240-41 (citations omitted). But where probable cause exists to believe that only a minor offense has been committed, "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned." *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984).

Although George may have had arguable probable cause to arrest Bratt for battery, we cannot find that, as a matter of law, that George was permitted to make a warrantless entry into Plaintiffs' home under the facts viewed in the light most favorable to Plaintiffs. No exigent circumstances existed here. No reasonable officer would believe that Bratt's conduct presented an imminent risk of serious injury to Plaintiffs or to George.

Nor can we conclude that the facts viewed in the light most favorable to Plaintiffs allow for a determination that George entered Plaintiffs' home in lawful

"hot pursuit" of Bratt. Under the "hot pursuit" doctrine, a law-enforcement officer may make a warrantless entry into private property to arrest a suspect who is attempting to avoid arrest by fleeing into the private property. *See United States v. Santana*, 427 U.S. 38, 42-43 (1976). In order for this exception to apply, however, the arrest must have been "set in motion in a public place." *Id.* at 42; *McClish*, 483 F.3d at 1245. Furthermore, "some sort of chase" must have occurred, *Santana*, 427 U.S. at 43, which involves the "immediate or continuous pursuit of the suspect from the scene of a crime," *Welsh*, 466 U.S. at 753.

Here, no immediate or continuous pursuit of Bratt "from the scene of the crime" happened. The events leading to Bratt's arrest all occurred within Plaintiffs' residence. Since Bratt never left the scene of the crime, no pursuit of Bratt "from" the scene of the crime could have happened. And even if "some sort of chase" had transpired, the arrest was set in motion in a private place. *Id.* Bratt could not have been attempting to avoid an arrest that lawfully could have been made in a public space by "the expedient of escaping to a private place"—because he was already, and remained at all relevant times, in a "private place." *United States v. Santana,* 427 U.S. 38, 43, 96 S. Ct. 2406, 2410 (1976).

George also contends that his entry into Plaintiffs' home was lawful under Fla. Stat. § 901.15(1). Section 901.15(1) states that "a law enforcement officer may arrest a person without a warrant when the person has committed a felony or

10

misdemeanor or violated a municipal or county ordinance in the presence of the officer.  An arrest for the commission of a misdemeanor . . . shall be made immediately or in fresh pursuit."  But such an arrest must still comply with the Constitution.[5] The Florida statute does not somehow exempt an officer from the constitutional requirement that "absent valid consent or exigent circumstances, law enforcement may not cross the threshold of a residence without a warrant." *Payton v. New York*, 445 U.S. 573, 576 (1980).  As we have noted above, the Supreme Court has held that "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense has been committed." *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984).

We are also not persuaded by George's reliance on *Coffin v. Brandau*. 642 F.3d 999 (11th Cir. 2011).  In *Coffin*, we considered whether the law was clearly established that Fourth Amendment protection extended to open and attached garages for qualified-immunity purposes.  *Id.* at 1003-05.  *Coffin* does not address George's problem of whether a warrantless entry into a residence for the purposes of a misdemeanor arrest is authorized by §901.15(1).  But *McClish v. Nugent* does.

---

[5] Indeed, Florida courts have repeatedly established that there is "no authority given to a police officer to enter a suspect's home to effect a warrantless arrest for a misdemeanor." *See Johnson v. State*, 395 So. 2d 594 (Fla. Dist. Ct. App. 1981); *See also Conner v. State*, 641 So. 2d 143 (Fla. Dist. Ct. App.), *rev. denied*, 649 So. 2d 234 (Fla. 1994) (defendant's misdemeanor of resisting arrest without violence or even battery on the mother did not constitute serious enough offenses to uphold the warrantless entry into a defendant's home for what were then two minor misdemeanors).

11

483 F.3d 1231 (11th Cir. 2007). In *McClish*, we held that arresting someone inside his or her home without a warrant violates the Fourth Amendment even if probable cause exists, when exigent circumstances do not also exist. *Id.* at 1248. Under *McClish*, the law had been clearly established at the time of Bratt's arrest, and the district court did not err in denying qualified immunity to George on summary judgment.

## VI.

For these reasons, we **AFFIRM** the district court's denial of summary judgment with respect to Plaintiffs' Fourth Amendment claim. George, of course, may raise the defense of qualified immunity at trial.